**Adrian Vicente BARBOSA, Appellant**

v.

**The STATE of Texas, Appellee**

**No. 04-16-00254-CR**

Court of Appeals of Texas,
San Antonio.

Delivered and Filed: December 6, 2017

61.  *See* Tex. R. App. P. 47.1.

Nathan H. Chu, Laredo, TX, for Appellant.

David L. Reuthinger, Jr., Webb County District Attorney's Office, Laredo, TX, for Appellee.

Sitting: Sandee Bryan Marion, Chief Justice, Karen Angelini, Justice, Patricia O. Alvarez, Justice

## OPINION

Opinion by: Patricia O. Alvarez, Justice

This case stems from Appellant Adrian Vicente Barbosa's arrest for possession of marijuana and possession of a controlled substance-cocaine. On April 12, 2016, after finding Barbosa guilty on both counts, the jury assessed punishment at ten years' confinement in the Institutional Division of the Texas Department of Criminal Justice. On appeal, Barbosa contends the evidence is insufficient to prove he possessed the contraband. We affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On November 20, 2014, Laredo Police Department Officer Jacqueline Siegfried received information from a confidential informant that hundreds of pounds of marijuana were being stored at a Webb County residence. The informant identified the residence by cross streets, and described it as a gray mobile home, with a chain link fence, and yellow caution tape on the fence.

Officer Siegfried identified the location and conducted surveillance for approximately thirty minutes before approaching the residence. Officer Siegfried and her partner knocked on the front door, presented themselves as officers, and asked to enter the residence. Officer Siegfried testified that San Juanita, Barbosa's mother, answered the door and provided verbal consent for the officers to enter the residence. No contraband was located in the residence.

Officer Siegfried described Barbosa as calm when he exited one of the bedrooms. As the officers exited the residence, Offi-

cer Siegfried noticed three vehicles in the front yard, each within the property's fence line. Officer Siegfried testified that as she approached one of the vehicles, a blue Crown Victoria, and stood within three feet of the vehicle, she could smell the odor of marijuana. Laredo Police Department K9 Officer Jose Santos Hinojosa Jr. also testified regarding the strong odor. Officer Siegfried further explained that the strongest smell emanated from the rear or trunk of the vehicle.

Barbosa reported the vehicle belonged to a friend who passed away approximately one month earlier. Barbosa claimed the vehicle had been at his mother's residence for approximately a month; he was adamant that he neither owned the vehicle nor had a key to the vehicle. The K-9 officer walked the dog near the Crown Victoria and the dog immediately alerted to the rear of the vehicle.

Officer Siegfried again inquired as to the vehicle's owner. Barbosa reported the vehicle was not his and that he did not see any problem with the officers opening the vehicle. Officer Siegfried testified,

> [W]e asked him if there was any problem with us opening the vehicle. He said, no. That it wasn't his. So there is no problem. And we—we were able to get a slim jim to open the vehicle.

The officers subsequently located nine bundles of marijuana, weighing approximately 160 pounds, and six to seven ounces of cocaine, in the trunk of the vehicle. Laredo Police Department Officer Miguel Angel Guantos testified the cocaine was valued at approximately $4,800.00, and the marijuana at approximately $48,000.00. The officers also located approximately $3,000.00 in cash, receipts, digital scales typically used in drug transactions, cellophane rolls, paperwork, and a notebook, in the trunk. Officer Guantos further explained cellophane is commonly used "to

avoid canine detection or conceal the odor, while at the same time you're containing the substance." When asked about the marijuana in the Crown Victoria's trunk, Officer Guantos described the marijuana as "very poorly wrapped" and "very green or new." He explained these two factors resulted in the strong smell outside of the vehicle.

Officer Siegfried testified that she photographed the seized items before placing them in the Laredo Police Department property room. The photographs were admitted before the jury.

The forensics officers collected fingerprints from the seized items. Two prints were suitable for comparison; one of the prints from the cellophane rolls matched Barbosa's prints. Although several of the items seized on the day in question were misplaced or inadvertently destroyed, the State offered photographs of the ledger and the receipts. During her testimony, Officer Siegfried identified the photographs and testified the dates in the ledger began on October 24, 2014, and continued through the date of the seizure, November 20, 2014.

Officer Guantos testified that the ledger seized from the trunk is consistent with those used with "mid-level, street-level amounts of drugs, just to keep track of what's leaving, when you're selling and who's buying." He further explained the ledgers typically utilize aliases or street names. For example, although the ledger included the name "Mark Cuban," Officer Guantos agreed the name was "probably not the Mark Cuban that owned the Dallas Mavericks." Officer Guantos further explained the notations throughout the ledger; specifically, the ledger purported to represent that the cocaine was being sold for $400.00 for a half-ounce, $800.00 for an ounce, and $1,700.00 for two ounces. He explained the notation of the number

eight, with a circle around it, represented an eight-ball, or one-eighth of an ounce of cocaine. Finally, Officer Guantos testified that Barbosa's use of his mother's house to stash and deal drugs was consistent with street-level drug dealing.

Officer Siegfried was also able to determine the individual Barbosa identified as owning the vehicle, Mario Hernandez Jr., passed away on October 29, 2014—approximately three weeks before many of the ledger's entries were made.

The jury returned a guilty verdict against Barbosa for possession of marijuana and possession of cocaine and assessed a sentence of ten years' confinement in the Institutional Division of the Texas Department of Criminal Justice on each count. This appeal ensued.

## SUFFICIENCY OF THE EVIDENCE

### A. Standard of Review

In reviewing the sufficiency of the evidence, "we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011); *accord Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). "This standard recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence...." *Adames*, 353 S.W.3d at 860; *accord Gear*, 340 S.W.3d at 746. The reviewing court must also give deference to the jury's ability " 'to draw reasonable inferences from basic facts to ultimate facts.' " *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is

sufficient to support the conviction." *Id.* (citing *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)).

We may not substitute our judgment for that of the jury by reevaluating the weight and credibility of the evidence. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). We defer to the jury's responsibility to resolve any conflicts in the evidence fairly, weigh the evidence, and draw reasonable inferences. *See Hooper*, 214 S.W.3d at 13; *King*, 29 S.W.3d at 562. The jury alone decides whether to believe eyewitness testimony, and it resolves any conflicts in the evidence. *See Hooper*, 214 S.W.3d at 15; *Young v. State*, 358 S.W.3d 790, 801 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). In conducting a sufficiency review, "[w]e do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure that the jury reached a rational decision." *Young*, 358 S.W.3d at 801.

### B. Arguments of the Parties

Barbosa argues that, even viewed in the light most favorable to the verdict, the evidence may support that he was present at the same location as the seized marijuana and cocaine, but the evidence is insufficient to support a conviction for possession of those drugs.

### C. Possession of a Controlled Substance

A person commits the offense of possession of a controlled substance if he knowingly or intentionally possesses it. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a) (West 2017); *see also* TEX. PENAL CODE ANN. § 1.07(a)(39) (West Supp. 2016) (defining possession as "actual care, custody, control, or management").

■ "To support a conviction for possession of a controlled substance, the State must prove: (1) that appellant exercised actual care, control and management over the contraband; and (2) that appellant had knowledge that the substance in his possession was contraband." *Williams v. State*, 478 S.W.3d 947, 949 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (citing *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995)). In this case, the State bore the burden to prove by "reasonable inference that the defendant knowingly possessed the contraband." *Id.*

■ "[E]vidence which affirmatively links [Barbosa] to [the marijuana and cocaine] suffices for proof that he possessed it knowingly." *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995) (en banc); *accord Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Courts look at a laundry list of facts to establish affirmative links between the defendant and the contraband, including:

(1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash;

and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006); *see also Tate v. State*, 500 S.W.3d 410, 414 (Tex. Crim. App. 2016); *Poindexter*, 153 S.W.3d at 409 n.24 (affirmative link connecting contraband to accused "can be established when the contraband is in plain view or when the contraband is hidden in a place tied to the accused"). It is "not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial." *Evans*, 202 S.W.3d at 162; *see Roberson v. State*, 80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) ("Indeed, the number of linking factors present is not as important as the 'logical force' they create to prove that the crime was committed."). "Affirmative links tend to establish 'that the accused's connection with the contraband was more than just "fortuitous." ' " *Gill v. State*, 57 S.W.3d 540, 544 (Tex. App.—Waco 2001, no pet.) (quoting *Harris v. State*, 994 S.W.2d 927, 933 (Tex. App.—Waco 1999, pet. ref'd)).

■ The mere presence of the accused at the location where contraband is found is not sufficient, in and of itself, to establish his knowing possession. *See Evans*, 202 S.W.3d at 162. If combined with other evidence, however, presence or proximity, may be sufficient to establish this element. *See id.*

### D. Analysis

■ The question on appeal is not whether the drugs *could have* belonged to someone else or *could have* been planted in the vehicle, but whether the evidence provided sufficient affirmative links to connect Barbosa to the marijuana and cocaine found in the Crown Victoria.

The State need not prove Barbosa had sole possession of the contraband; the affirmative links between Barbosa and the contraband must show Barbosa "knew of the drugs and constructively possessed them." *Poindexter*, 153 S.W.3d at 412. Here, Barbosa was legally residing on the premises, with full permission of his mother, the owner of the premises. The record clearly supports Barbosa had the right to possess the place where the drugs were found. *See id.* at 406 (reiterating "common-sense notion that a person-such as a father, son, spouse, roommate, or friend-may jointly possess property like a house but not necessarily jointly possess the contraband found in that house.").

Barbosa told the officers that the Crown Victoria belonged to Mario Hernandez, that he did not have keys to the vehicle, access to the vehicle, or a means to unlock the vehicle, and that the vehicle had been on the property since before Hernandez's October 29, 2014 death. In spite of Barbosa's assertions that the vehicle was not his, and that he did not have access to the Crown Victoria, Barbosa's fingerprint was found on the cellophane wrap, located *inside* the vehicle. *See Coria v. State*, No. 08-04-00233-CR, 2006 WL 1356348, at *5 (Tex. App.—El Paso 2006, pet. ref'd) (not designated for publication) (establishing knowledge and control through evidence of appellant's fingerprints in van despite appellant's statement that he had never been inside the van); *see also Wright v. State*, 401 S.W.3d 813, 819 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (determining affirmative link of fingerprints found on marijuana-growing equipment); *Alvarez v. State*, No. 07-02-0302-CR, 2004 WL 868249, at *2 (Tex. App.—Amarillo Apr. 22, 2004, pet. ref'd) (considering a latent fingerprint from his left index finger was found on the brown paper bag containing the blue grocery bag in which the cocaine was bundled in plastic bags as affirmative

link for possession); *Hall v. State*, 86 S.W.3d 235, 240–41 (Tex. App.—Austin 2002, pet. ref'd) (considering whether the accused's fingerprints were on the contraband's container). In light of potential dual possession of the premises, the fingerprint provides evidence of Barbosa's knowledge and control despite Barbosa's denial that he had access to the vehicle. It is Barbosa and his mother's dual possession of the residence that makes the evidence of Barbosa's fingerprint so relevant.

We further note the large quantity of drugs located in the vehicle. *See Allen v. State*, 249 S.W.3d 680, 698 (Tex. App.—Austin 2008, no pet.) (concluding presence of a large quantity of drugs strengthens the inference that the accused was aware of the drugs). Officer Guantos testified the odor was very strong and anyone standing near the vehicle could smell the marijuana. *See Whitworth v. State*, 808 S.W.2d 566, 569–70 (Tex. App.—Austin 1991, pet. ref'd) (strong odor of marijuana found in vehicle's trunk is an affirmative link establishing requisite element of actual care, custody, control, or management of drugs). Other contraband and drug paraphernalia were also present; in addition to the marihuana, cocaine, and cellophane wrap, a drug scale, cash, and ledger were present. *See Evans*, 202 S.W.3d at 162 n.12, 163–65 (considering presence of other contraband, narcotics paraphernalia, and large amount of cash an affirmative link); *Hargrove v. State*, 211 S.W.3d 379, 386 (Tex. App—San Antonio 2006, pet. ref'd) (concluding presence of narcotics paraphernalia, including digital scale, and weapons in house constituted affirmative links).

Barbosa asserted the vehicle remained on the property, abandoned and locked, for over a month; yet, the dates contained within the ledger prove otherwise. Inside the vehicle's trunk, with the marijuana,

cocaine, cellophane wrap, and scales, was a ledger containing notations for transactions occurring in November, beyond Hernandez's death. The jury was free to question Barbosa's assertions that he did not access the vehicle after Hernandez's death, and that he did not have access to the vehicle. The ledger entries indicated activity after Hernandez died and after the date on which Barbosa contended the vehicle was abandoned. *See Edwards v. State*, 178 S.W.3d 139, 144 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

The jury also heard testimony that the contraband located in the vehicle was valued at over $50,000.00. It was reasonable for the jury to conclude that Barbosa knew the value of the vehicle's contents when he was entrusted with its care. *See also Santiesteban–Pileta v. State*, 421 S.W.3d 9, 14 (Tex. App.—Waco 2013, pet. ref'd) (evaluating the "valuable cargo" link and finding that where evidence showed drugs were valuable, jury could rationally infer that the defendant would not have been entrusted in taking the cargo across an international border if he was unaware of the drugs); *Reynolds v. State*, No. 08-14-00307-CR, 2017 WL 2824021, at *11 (Tex. App.—El Paso June 30, 2017, no pet.) ("Given the large value of the drugs, the jury could rationally infer that Appellant would not have been given access to the drugs in the sleeper car if he was unaware of them as he claimed.").

Viewing the evidence in the light most favorable to the jury's verdict, and considering the logical force of the affirmative links, a rational trier of fact could conclude beyond a reasonable doubt that Barbosa knowingly possessed the marijuana and cocaine, the ledgers, and cash located in the Crown Victoria. *See Williams*, 478 S.W.3d at 949.

We conclude that the direct and circumstantial evidence, when taken in the light most favorable to the verdict, including the evidence supporting Barbosa's statements and the evidence in direct conflict therewith, supports the jury's conclusion that Barbosa was not an innocent bystander and that his proximity to the cocaine and the marijuana was not merely fortuitous. *See Adames*, 353 S.W.3d at 860. The evidence affirmatively links Barbosa to the cocaine and marijuana hidden in the vehicle and it is legally sufficient to establish beyond a reasonable doubt that he exercised actual care, custody, control, or management of the cocaine and marijuana. *See Evans*, 202 S.W.3d at 165–66; *Menchaca v. State*, 901 S.W.2d 640, 652 (Tex. App.—El Paso April 27, 1995).

Accordingly, we affirm the trial court's judgment.