

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00616-CR

Damian **FERRELL**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2015-CR-9916
Honorable Sid L. Harle, Judge Presiding

Opinion by: Rebeca C. Martinez, Justice

Sitting: Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed: October 10, 2018

AFFIRMED

Damian Ferrell appeals his conviction for possession with intent to deliver a controlled substance, to wit: cocaine. On appeal, Ferrell challenges the sufficiency of the evidence to establish adequate affirmative links between him and the cocaine found in the vehicle. We overrule Ferrell's issue and affirm the trial court's judgment.

### BACKGROUND

At approximately 2:30 a.m. on July 1, 2015, San Antonio Police Officers Jim Acuna and James Quintanilla were on special patrol for drug and prostitution activity in the area of Haven for

Hope, which is a housing facility for the homeless. The uniformed officers were patrolling in a marked patrol vehicle with a video camera mounted to the dashboard and recording. According to Officer Acuna's testimony, he and his partner noticed a female standing next to a gray vehicle that was stopped with its brake lights on in a parking lot. The female was talking to someone inside the vehicle. In describing what he observed, Officer Acuna stated there was only one person in the vehicle, which was the driver; he later testified, however, that he could not tell how many people were inside the gray vehicle. Officer Acuna was not able to see the driver. Officer Acuna did not recall whether the female was standing next to the driver's side or the passenger side. Officer Acuna testified that he suspected a possible drug or prostitution transaction, but he could not recall if he saw anything pass between the female and the vehicle's driver.

As the officers' patrol car approached the parking lot, the gray vehicle pulled away and drove through the parking lot and turned on a side street. The officers stopped their patrol vehicle and briefly spoke to the female, but did not obtain much information from her. During that exchange, the officers lost sight of the gray vehicle. Officer Acuna could not recall how long the gray vehicle was out of their sight. Officer Acuna testified that after speaking to the female they drove in the same direction in which the gray vehicle had driven and found it parked in an angled parking space on the street. The vehicle was parked "close" to where they initially observed it and Officer Acuna believed it was the same gray vehicle. Officer Acuna first saw Ferrell as he was "walking away from the vehicle" and Acuna believed him to be the driver of the gray vehicle. At trial, Officer Acuna initially stated that Ferrell was "one to two vehicle lengths away" from the gray vehicle when he first saw him. However, Officer Acuna later admitted he was "uncertain" of Ferrell's exact position with respect to the gray vehicle. He also did not recall if he saw Ferrell exit the gray vehicle or not, but believed he first saw him as Ferrell was walking away from the car. Officer Acuna initially testified that Ferrell was alone, but later testified he could not recall

whether anyone else was in the vicinity. During his trial testimony, Officer Acuna conceded he had only a vague personal recollection of the events and refreshed his memory by reviewing part of the video and his partner's report.

The officers stopped Ferrell and began questioning him. A pat-down of Ferrell's person was conducted, but Officer Acuna could not recall what items Ferrell had in his possession. After the patrol vehicle was re-positioned so the video camera could record the events, Officer Acuna approached the gray vehicle and shined his flashlight inside through the driver's window. Officer Acuna testified that he observed a "white rock-like substance" that he believed to be crack cocaine in plain view on the driver's side floorboard, "where the driver's feet would be." He estimated the amount to be about 8.50 grams and testified that it was "more than the amount a normal person would use for the night." At trial, a forensic scientist testified that his tests confirmed the substance was 8.890 grams of cocaine.

The videotape from the patrol vehicle was admitted into evidence and played for the jury without any audio.[1] The video, State Exhibit #1-A, shows a vehicle stopped in a parking lot with its brake lights on. The vehicle drives away as the patrol car approaches the parking lot and its left blinker comes on. Instead of turning left, the vehicle proceeds through the parking lot and passes out of sight for a little longer than one minute. During that period of time, the video shows the vehicle's headlights reflected off the side of a building as it approaches the end of the parking lot. The vehicle does not make a left-hand turn, which would have placed it on the street directly in front of the patrol car, but rather appears to turn to the right. The patrol car drives in that direction and makes a right-hand turn on to the same street. The patrol car then stops in the street behind several vehicles that are parked in angled spots along the side of the building. No people are seen

---

[1] At the conclusion of a pretrial suppression hearing, the trial court found the officers failed to administer *Miranda* warnings to Ferrell prior to a custodial interrogation and suppressed Ferrell's statements to the officers at the scene.

in the video. The video, which is facing forward, shows Officer Acuna standing in front of the patrol vehicle and talking to someone off screen to the left. Officer Acuna walks toward the person (Ferrell) and the video partially shows him performing a pat-down of Ferrell's person and going through several items. Specifically, the video shows Officer Acuna counting several cash bills; no evidence was admitted at trial of the amount of money in Ferrell's possession.

The patrol vehicle is then repositioned to face the vehicle, showing Ferrell for the first time, in handcuffs standing in front of the patrol car with Officer Acuna. The video shows Officer Acuna talking to Ferrell and gesturing with his right hand, which is holding an item that appears to be car keys. After Officer Quintanilla comes over to stand next to Ferrell, Officer Acuna walks over to the vehicle and the front headlights flash "on" against the wall. Officer Acuna shines his flashlight through the driver's side window of the vehicle and then returns to stand by Ferrell, talking to him again. After a period of time, Officer Acuna again returns to the vehicle and the video shows the rear brake lights flash "on." Officer Acuna opens the driver's side door of the vehicle, and looks around inside the vehicle with his flashlight. As Officer Acuna walks away from the vehicle, its driver's side door is shown to be wide open.

Ferrell was indicted for possession with intent to deliver cocaine in the amount of four grams or more but less than 200 grams (Count I) and possession of the same quantity of cocaine (Count II). The indictment also contained an enhancement allegation of a prior conviction in 2010. A jury found Ferrell guilty of possession with intent to deliver cocaine in the amount of four grams or more but less than 200 grams (Count I). *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112 (a), (d) (West 2017). The trial court found the enhancement allegation "true" and sentenced Ferrell to fifteen years' imprisonment. Ferrell appealed.

## DISCUSSION

In a single issue, Ferrell argues the evidence is insufficient to prove he was the driver of the gray vehicle, and therefore insufficient to prove he had actual care, custody, and control over the cocaine found inside the vehicle.

### *Standard of Review*

In reviewing the sufficiency of the evidence, we determine whether, viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The essential elements of the crime are those defined by a hypothetically correct jury charge. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014); *Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012) (hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden, and adequately describes the particular offense). We must defer to the jury's assessment of the credibility of the witnesses and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899.

Circumstantial evidence alone can be sufficient, and is as probative as direct evidence in establishing guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Juries may reach conclusions based on factually supported inferences, which are conclusions reached by considering other facts and deducing a logical consequence from them. *Id.* at 16. Juries may not, however, reach conclusions based on mere speculation, *i.e.*, mere theorizing or guessing about the possible meaning of the facts and evidence presented. *Id.* We determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). We presume that the jury resolved any inconsistencies in the evidence in favor of the verdict and

defer to that resolution. *Id.* at 448-49. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Thomas*, 444 S.W.3d at 8 (quoting *Hooper*, 214 S.W.3d at 13).

*Analysis*

Count I of the indictment alleged that, on or about July 1, 2015, Ferrell did "knowingly possess, with intent to deliver, a controlled substance, namely: COCAINE, which by aggregate weight, including adulterants and dilutants was of an amount Four (4) grams or more but less than Two Hundred (200) grams." The jury charge tracked the language of the indictment, and included instructions defining the terms "possession" and "deliver." "Possession" was defined as meaning "actual care, custody, control or management of the controlled substance." "Deliver" was defined as meaning "to transfer, actually or constructively, to another a controlled substance, regardless of whether there is an agency relationship." Count II alleging simple possession was charged in the alternative. The jury returned a verdict of "guilty" on Count I, and thus did not consider Count II.

As noted, Ferrell was convicted of possession of a controlled substance with intent to deliver. On appeal, Ferrell only challenges the sufficiency of the evidence to prove the element of "possession." To prove possession of a controlled substance, the State must prove the accused: (1) exercised care, custody, control, or management over the controlled substance, and (2) knew the substance was contraband. TEX. PENAL CODE ANN. § 1.07(a)(39) (West Supp. 2017); *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016). The State must establish that the defendant's connection with the contraband was "more than fortuitous." *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); *Barbosa v. State*, 537 S.W.3d 640, 645 (Tex. App.—San Antonio 2017, no pet.). A defendant's mere presence at the location where drugs are found is insufficient, by itself, to establish actual care, custody, and control. *Tate*, 500 S.W.3d at 413. However, presence

when combined with other independent facts and circumstances may justify a reasonable inference that the defendant knowingly possessed the drugs. *Id.* at 413-14; *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). In *Evans*, the Court of Criminal Appeals outlined a non-exclusive list of fourteen possible factors, or "affirmative links," that may indicate a link connecting the defendant to the knowing possession of drugs:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Evans*, 202 S.W.3d. at 162 n.12.

It is not the number of links that is dispositive, but the logical force of all of the combined circumstantial and direct evidence. *Id*. at 162. Further, other possible links that do not exist in a case do not undermine the links that are present in the case. *Id.* at 164; *Lair v. State*, 265 S.W.3d 580, 588 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). In *Tate*, the court clarified that although the *Evans* factors are helpful in guiding a court's analysis, "the ultimate inquiry remains that set forth in *Jackson*: [b]ased on the combined and cumulative force of the evidence and any reasonable inferences therefrom, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Tate*, 500 S.W.3d at 414.

Ferrell argues that the evidence proved only that he was present in the vicinity where the cocaine was found, which is insufficient to establish the possession element. He stresses Officer Acuna's testimony that he only saw Ferrell as he was walking away from the parked gray vehicle,

and could not identify Ferrell as the driver of the vehicle, or even recall how many people were inside the vehicle. Ferrell also argues that Officer Acuna's credibility was undermined by his frequent testimony that he "could not recall" many of the details surrounding the events that occurred two years prior, such as whether he saw anything pass between the female and the driver of the gray vehicle, the length of time the gray vehicle was out of his sight, whether he observed Ferrell exiting the gray vehicle or merely walking away from it, and how far away Ferrell was when the officers first observed him. In arguing that the jury's verdict was based on speculation, rather than reasonable inferences, Ferrell cites to the absence of many of the *Evans* factors, such as the lack of any drugs or drug paraphernalia on his person, the fact that he was not under the influence of drugs at the time, the fact that he did not attempt to flee or make furtive gestures, and the lack of evidence tying him to the gray vehicle.

As noted, our analysis focuses on the independent factors linking Ferrell to the gray vehicle and the drugs that are present, rather than the factors that are absent. *See Evans*, 202 S.W.3d at 164. Here, almost 9 grams of cocaine were found in plain view on the driver's side floorboard of the closed gray vehicle. *See id.* at 162 n.12 (listing factor #2 "whether the contraband was in plain view," and factor #12 "whether the place where the drugs were found was enclosed"). As the court stated in *Tate*, "it would be reasonable to infer that the owner-driver would be aware of items in his vehicle in plain view." *Tate*, 500 S.W.3d at 417. Such an inference would be especially reasonable in this case where the drugs were found on the floorboard "where the driver's feet would be," and thus were found in close physical proximity to the driver of the vehicle. *See Evans*, 202 S.W.3d at 162 n.12 (factor #3, "the defendant's proximity to and the accessibility of the narcotic").

Thus, the more determinative inquiry is what facts exist to link Ferrell to the gray vehicle in which the cocaine was found. Officer Acuna testified he suspected a drug or prostitution

transaction when he first saw the female talking to the driver of the gray vehicle, who drove away as soon as the patrol car approached. Officer Acuna testified that, in his experience, it is common for a vehicle to immediately leave the area when the police arrive if illegal activity is occurring. The video shows the gray vehicle's route and when it passes out of direct sight, shows its headlights reflecting off the wall where it either had to stop, or turn left or right on to the side street. The vehicle does not turn left. Officer Acuna testified that he and his partner followed the direction of the gray vehicle and the video shows their patrol car turning on to the side street by the building wall. Officer Acuna testified that he first saw Ferrell as he was "walking away from" the gray vehicle and he was only "one to two vehicle lengths" away from it when he was stopped by the officers. In addition, Officer Acuna testified that Ferrell was the only person in the vicinity at the time. The video does not show any other people in the immediate area, but also does not show Ferrell at the time of the initial contact. The jury was entitled to evaluate Officer Acuna's credibility and to believe his testimony about Ferrell's proximity to the gray vehicle. The jury could also draw a reasonable inference that the gray vehicle parked on the side street was the same gray vehicle the officers had observed earlier, with the driver talking to the female, because Officer Acuna testified they followed in the same direction, the video shows that only one minute had elapsed, the vehicle was found parked close by, and the parked vehicle was the same type of car, i.e., a dark sedan.

The video further shows that a short time after Officer Acuna conducts the pat-down of Ferrell and examines the items found on Ferrell's person, the officer is shown holding something resembling keys in his right hand. Officer Acuna then approaches the gray vehicle and the rear brake lights flash. After looking inside the driver's window with his flashlight, Officer Acuna later returns to the vehicle, the front headlights flash against the wall, and a few seconds later the driver's side door is shown to be wide open. Therefore, based on the video, the jury could have

reasonably inferred that Ferrell had the keys to the gray vehicle in his possession and Officer Acuna used the keys to open the driver's door and gain access to the interior of the vehicle where the cocaine was found on the floorboard in plain sight. Therefore, a rational factfinder could conclude that Ferrell was the driver of the vehicle and knowingly had possession of the drugs found inside it.

It was the jury's role to assess credibility and determine the weight of the evidence, and on review we must presume the jury resolved any inconsistencies, or conflicting inferences, in favor of its verdict. *Tate*, 500 S.W.3d at 413. We conclude that the logical force of the combined pieces of circumstantial evidence in this case, coupled with reasonable inferences from them, is sufficient to establish, beyond a reasonable doubt, that Ferrell exercised actual care, custody, control, or management of the cocaine found on the driver's floorboard of the vehicle. *See id.* We therefore affirm the judgment of the trial court.

Rebeca C. Martinez, Justice

DO NOT PUBLISH