

# NUMBER 13-20-00103-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JOSE REYES ROMERO JR.,                                              Appellant,

v.

THE STATE OF TEXAS,                                                 Appellee.

On appeal from the 24th District Court
of Victoria County, Texas.

# MEMORANDUM OPINION

**Before Justices Benavides, Hinojosa, and Silva**
**Memorandum Opinion by Justice Silva**

Appellant Jose Reyes Romero Jr. appeals his convictions of evading arrest with a vehicle, a third-degree felony, and manufacturing or delivering a controlled substance (methamphetamine), greater than one gram but less than four grams, a second-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (c); TEX. PENAL CODE ANN.

§ 38.04(a), (b)(2)(A). By a single issue, Romero argues the evidence was legally insufficient to sustain either conviction. We affirm.

## I. BACKGROUND

Romero was arrested on charges of evading arrest and manufacturing or delivering a controlled substance on February 26, 2019. He was indicted on both counts and pleaded not guilty. The case proceeded to trial, where Romero disputed that he operated the vehicle or was in possession of any narcotics or contraband found in the vehicle.

### A. State's Case-in-Chief

Ryan Kelly, an officer with the Victoria Police Department (VPD), testified he was on patrol at approximately 4:53 a.m. on February 26, 2019, when he observed a blue Chevrolet Trailblazer being driven without headlights on. Kelly performed a U-turn and activated his emergency vehicle lights. The driver of the blue Chevrolet, however, did not stop. For three minutes, the driver disregarded "numerous stop signs [and] red lights" before coming to a stop in a residential neighborhood in the "back of someone's driveway in between two houses." Kelly immediately approached the vehicle and noted that the driver's side door was inoperable because it was pressed against the side of a house.[1] Kelly testified he ran to the passenger side of the vehicle and found the front passenger door was wide open. A man later identified as Romero was lying on the ground several feet away. "He was stating that, you know, 'They went that way. They went that way.'" Kelly placed Romero under arrest. Kelly testified the immediate area was "fenced in," and he did not see anyone else.

---

[1] Photographic exhibits admitted at trial corroborated Kelly's observations.

2

Kelly searched the vehicle and found an open alcoholic beverage in the center console and a "black shaving kit" on the front passenger seat. The kit contained "numerous baggies" of methamphetamine[2] and a wallet with two identification cards: Romero's[3] and an unknown female, Lucia Rubio Mendiola. Kelly also retrieved a scale from the front passenger seat, which he testified was indicative of "sales and distribution of narcotics."

On cross-examination, Kelly was asked whether it was possible that Romero had been seated outside on a nearby stairwell and had fallen on the ground when the vehicle collided nearby, as Romero claimed. Kelly responded, "When I pulled into the driveway—it may not show it on camera,[4] but with my eyes I didn't see anybody fall from the stairwell. So to me that was impossible."

VPD Officer Christopher Yogi testified he responded to Kelly's calls for assistance during Kelly's active pursuit of Romero's vehicle. Yogi testified Romero and Kelly passed him going in the opposite direction on a two-way residential street, but pursuant to VPD protocol, Yogi did not attempt to block Romero's vehicle with his own.

> I looked into the vehicle. I saw the subject in the vehicle. All I could see at that time appeared to be—was a Hispanic male, fairly that was . . . slim build; and then he was wearing kind of like the tank tops but with the—I don't know—with the shorter sleeves or the thinner shoulder strap.

---

[2] Roman Gonzales, a forensic scientist with the Texas Department of Public Safety, testified to the weight and chemical relation of the items tested. Gonzales said there were "four bags" submitted by law enforcement for testing, but only one bag was analyzed. "The results of my analysis was that the evidence contained 1.13 grams of methamphetamine," testified Gonzales.

[3] Law enforcement found a Texas Department of Criminal Justice-issued identification card, which displayed Romero's photograph, name, date of birth, inmate identification number, and issuance date.

[4] Kelly's vehicle dash camera and body camera recordings were admitted into evidence.

Yogi identified Romero as the driver of the vehicle. Yogi was the second officer at the scene, and he helped Kelly search the vehicle. Yogi also noted that Romero's vehicle appeared to have been "hot[-]wired."

VPD Officer John Ortiz testified he arrived after Romero had been restrained by Kelly and Yogi. Ortiz said he was tasked with searching around the area "for any signs of any other people." Ortiz testified he did not see anyone.

Jail call recordings were also admitted into evidence. In one call, Romero can be heard telling his girlfriend, Crystal Trevino:

> When I left I was just tripping, man . . . I just took off, and my lights were off. I didn't realize and the cop got behind me, and I was, like, man, f-ck this fool. I ain't gonna let them in my car no more. I just kept driving straight, man, and I just drove to the house and parked my car so they don't take it.

Romero claimed he wanted the confiscated narcotics reweighed because he knew he had "less than an eight ball." Romero also reminded Trevino that his vehicle needed to be hot-wired to start.

**B.      Defense's Case-in-Chief**

Trevino testified that she was unsure of whether, during a jail call, Romero admitted to her that he had been driving the night he was arrested. "I'm not sure. He probably admitted it to me, but I was halfway asleep." Trevino said she was primarily concerned with retrieving some of Romero's belongings during her conversation with Romero. Trevino testified that when she later went to the jail to pick up Romero's belongings, she was given two different wallets. One wallet contained an identification card and Visa card for Thomas Vladimer Simon, a name she did not recognize. Another wallet contained identification cards for Romero and Mendiola, who she stated is Romero's mother.

4

Romero testified that he was thirty-nine years old, born in Houston but raised "mostly in Dallas," and grew up in foster care from the age of four years old until he "aged out." Romero said he was convicted of aggravated robbery and sentenced to ten years' imprisonment in 2001. After he was released from prison, he was arrested and convicted of the offense of felon in possession of a firearm.[5] Romero said he was placed on probation but later arrested for driving while intoxicated (DWI), third or more. His community supervision was revoked in his firearm possession case, and he was sentenced to two years' imprisonment on August 27, 2014; Romero was also convicted in the DWI case and sentenced to eight years' imprisonment. Romero said he "paroled out" on July 7, 2018—seven months before his evading arrest.

According to Romero, he moved to Port Lavaca after he became reacquainted with his biological mother, Mendiola, and "found out [he] had eight sisters and a brother." When asked "[w]ho was in the car that was being followed by the police" that evening, Romero said it had been Mendiola "and some guy friend she was with." Romero maintained he had arrived at the residence[6] to find Mendiola and her friend drinking; they asked to borrow his car, and he loaned it to them. Romero testified that he went to sleep and was later awoken by a phone call from Mendiola. She claimed the police were trying to pull them over, and Romero said he instructed Mendiola to stop, but she refused because she had drugs in the vehicle. "And I asked her what she had on her, and she said something

---

[5] According to Romero's criminal records that were admitted at trial, Romero was arrested for the offense of felon in possession of a firearm on March 30, 2011, and he was placed on community supervision on August 30, 3012.

[6] Elsa Munoz testified that her sister, Maria Herrera, owns the property Romero was arrested on. Munoz testified that Romero had permission to be on the property, and he would stay there periodically although it was not his permanent residence because it lacked electricity or running water.

about under eight—she said, [']I have an eight ball.[']" Romero suggested that the methamphetamine found in the vehicle might have belonged to her friend.

Romero said he ran outside and witnessed the car come to a rolling stop; Mendiola and her friend jumped out of the vehicle and ran into the residence. Romero testified he "didn't want to tell on [his] mom," so he told officers he had seen two people run in an opposite direction. "I was just trying to protect my mother. But after she passed away on Thanksgiving, I figured that I didn't have to try to protect her no [sic] more."

Romero denied being intoxicated that evening and stated, "I've never done drugs in my whole life. I've never smoked marijuana. I've never done no kind of drugs." Romero testified that the black bag retrieved by police was not a shaving kit, but rather, it was a makeup bag that belonged to Mendiola—as did the wallet found inside of it. Romero said Mendiola kept his old identification card with her because she had become sentimental after they reunited.

When confronted with the jail call recordings during cross-examination, Romero stated that he knew he was being recorded and only assumed responsibility to "protect [his] mother." When asked why he would specifically tell Trevino that if he was released, he would not drink, do or sell drugs anymore, Romero again reiterated that everything he said on the recordings was to protect his mother.

The jury returned a guilty verdict. Following a hearing on punishment, the jury found two prior enhancement paragraphs true and assessed punishment at sixty years' imprisonment for each count to run concurrently. *See* TEX. PENAL CODE ANN. § 12.42(d). This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

By his sole issue, Romero argues the evidence was legally insufficient to support either conviction.

### A. Standard of Review and Applicable Law

In reviewing the sufficiency of the evidence to support a conviction, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

We consider both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from the evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018); *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013). "Each fact need not point directly and independently to the guilt of a defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Walker v. State*, 594 S.W.3d 330, 335 (Tex. Crim. App. 2020) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). We resolve any evidentiary inconsistencies in favor of the verdict, keeping in mind that the fact-finder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony. *Walker*, 594 S.W.3d at 335; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04.

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *See Metcalf v. State*, 597 S.W.3d 847, 856 (Tex.

Crim. App. 2020) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)); *Romano v. State*, 610 S.W.3d 30, 34 (Tex. Crim. App. 2020). The hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Walker*, 594 S.W.3d at 336.

Here, a hypothetically correct charge would instruct the jury to find Romero guilty of evading arrest with a vehicle if the State proved beyond a reasonable doubt that (1) Romero (2) intentionally (3) fled (4) from a person he knows is a peace officer (5) attempting to lawfully arrest or detain him, and (6) Romero used a vehicle while in flight. *See Calton v. State*, 176 S.W.3d 231, 234 (Tex. Crim. App. 2005); *see also* TEX. PENAL CODE ANN. § 38.04(a), (b)(2)(A).

The State was also required to prove beyond a reasonable doubt that (1) Romero (2) knowingly (3) possessed (4) between one and four grams of methamphetamine with (5) intent to deliver. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (c). "Knowingly possessed" requires proof that an actor (1) exercised "actual care, custody, control, or management" over the substance and (2) knew the substance was contraband. *Id.* § 481.002(38) (definition of possession); *Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011); *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). "Deliver" means to transfer, actually or constructively, to another a controlled substance, including an offer to sell a controlled substance. TEX. HEALTH & SAFETY CODE ANN. § 481.002(8).

"'[E]vidence which affirmatively links [an appellant] to [a controlled substance] suffices for proof that he possessed it knowingly.'" *Barbosa v. State*, 537 S.W.3d 640, 645 (Tex. App.—San Antonio 2017, no pet.) (quoting *Brown v. State*, 911 S.W.2d 744,

747 (Tex. Crim. App. 1995) (en banc)). "By its nature, a culpable mental state must generally be inferred from the circumstances." *Nisbett v. State*, 552 S.W.3d 244, 267 (Tex. Crim. App. 2018); *Duntsch v. State*, 568 S.W.3d 193, 216 (Tex. App.—Dallas 2018, pet. ref'd) ("Proof of mental state will almost always depend upon circumstantial evidence."). Additionally, the State need not show exclusive possession of the contraband to support a conviction; control over the contraband may be exercised by more than one person. *Robinson v. State*, 174 S.W.3d 320, 325 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

## B.     Analysis

Romero specifically argues the evidence is insufficient to support his convictions for evading arrest with a vehicle and manufacturing or delivering a controlled substance because the State failed to establish his identity as an element of either offense.

### 1.     Evading Arrest

With respect to his evading arrest with a vehicle conviction, Romero contends that the State's evidence did not establish beyond a reasonable doubt that he was the driver of the vehicle because: "Officer Kelly never testified to seeing [him] inside the vehicle or driving the vehicle," "Yogi believed that [he] was the same person he observed driving the vehicle but the State offered no proof in support," and Romero testified that it was Mendiola and her male companion operating the vehicle.

First, we observe that Romero conceded the blue Chevrolet is his vehicle. Yogi testified he observed a male matching Romero's description driving the vehicle. Although it was dark outside, Yogi's lights and Kelly's lights sufficiently illuminated Romero's vehicle, and Romero's vehicle closely passed Yogi's vehicle going less than 20 m.p.h. on the residential street. Moreover, as evidenced by footage from both Kelly's body camera

9

and patrol dash camera, after Romero came to a stop, the driver's door was blocked in by a wall, and less than twenty seconds elapsed between when Kelly stopped his patrol unit and made contact with Romero, who was lying beside the vehicle on the passenger side. Kelly explicitly disclaimed the possibility that Romero was only fortuitously there because he had jumped or fallen from a nearby stairwell, stating it was neither captured on camera nor did he see it happen. Ortiz confirmed he found no other persons after searching the area. Finally—although Romero testified that he was being untruthful at the time—Romero admitted to driving the vehicle and fleeing from police in jail call recordings. *See Ex parte Mayhugh*, 512 S.W.3d 285, 298 (Tex. Crim. App. 2016) ("[T]he fact-finder is free to believe all, part, or none of a witness's testimony.").

Based on this evidence, a rational trier of fact could have reasonably concluded that the State established the identity of Romero as the driver of the vehicle beyond a reasonable doubt. *See Walker*, 594 S.W.3d at 335; *see, e.g.*, *Phillips v. State*, 534 S.W.3d 644, 651–52 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (holding evidence was sufficient to establish the identity of appellant as the driver when the officer testified that he "was able to see into the vehicle and identify appellant as the driver of the vehicle"); *Fabela v. State*, 431 S.W.3d 190, 194 (Tex. App.—Amarillo 2014, pet. dism'd) (holding same when all officers involved in chase identified the driver as a Hispanic male, one officer identified the driver as the sole occupant of vehicle, and the appellant made several incriminating statements); *Castilla v. State*, 374 S.W.3d 537, 540 (Tex. App.—San Antonio 2012, pet. ref'd) (holding same when the appellant's documents were located in the vehicle and the arresting officer testified that he "got a 'good look'" at the driver when driver almost crashed into his patrol vehicle).

## 2. Possession

Regarding the offense of manufacturing or delivering a controlled substance, Romero challenges the element of possession, arguing that that the evidence fails to "affirmatively link" him to the controlled substance. Having already established *supra* that Romero was driving the vehicle prior to his arrest, the question on appeal is not whether the drugs could have belonged to someone else—i.e., his mother or her friend, as he asserts—but instead, whether the evidence provided sufficient affirmative links to connect Romero to the methamphetamine found in his vehicle. *See Tate v. State*, 500 S.W.3d 410, 413–14 (Tex. Crim. App. 2016); *Barbosa*, 537 S.W.3d at 645.

"When the contraband is not in the exclusive possession of the defendant, a fact finder may nonetheless infer that the defendant intentionally or knowingly possessed the contraband if there are sufficient independent facts and circumstances justifying such an inference." *Tate*, 500 S.W.3d at 413–14. The Texas Court of Criminal Appeals has summarized a non-exclusive list of factors for reviewing courts to consider in the affirmative links analysis:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Id.* (quoting *Evans*, 202 S.W.3d at 162 n.12). It is "not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial."

11

*Evans*, 202 S.W.3d at 162. As explained below, we conclude that the evidence of affirmative links in this case was sufficient to support appellant's conviction.

The methamphetamine in this case was found inside a black bag on the passenger seat of a vehicle owned by Romero and operated by him at the time of the traffic stop that led to the seizure. Though the methamphetamine contained no acknowledged odor and was not in plain view inside the vehicle, the black bag containing the methamphetamine had a wallet with Romero's identification card. Moreover, a scale was found in plain view, located right next to the black bag. At the time of his arrest, Romero denied driving the vehicle or possessing the contraband found inside, but officers did not identify any other individuals in the vehicle during the chase, there were no other persons found to be in the immediate vicinity of where the vehicle stopped, and Romero admitted to driving the vehicle and knowing the weight of the methamphetamine in audio recordings of jail phone calls admitted at trial. The jury was free to disbelieve Romero's explanations to the contrary. *See Walker*, 594 S.W.3d at 335.

Having reviewed the affirmative links present and based on the totality of the circumstances, the jury could have reasonably found that Romero exercised actual care, custody, control, or management of the methamphetamine that was found in his vehicle. *See Tate*, 500 S.W.3d at 413–14; *Medina v. State*, 565 S.W.3d 868, 874 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) (concluding the appellant was in possession of drugs when evidence indicated the "appellant was the only person in the vehicle when it was stopped, and it contained several belongings that were admittedly his"); *Hines v. State*, 535 S.W.3d 102, 107 (Tex. App.—Eastland 2017, pet. ref'd) (concluding sufficient affirmative links to tie appellant with methamphetamine found under the driver's seat where "the police initiated a stop of the vehicle driven by Appellant, he turned a corner,

stopped, got out, and walked away," "one of the officers testified that he saw Appellant driving the vehicle and that no one else was inside it," and marihuana was found in Appellant's pockets); *see also Hardaway v. State*, No. 13-15-00507-CR, 2017 WL 3431827, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 10, 2017, pet. ref'd) (mem. op., not designated for publication) (concluding that though only two affirmative links were present, "the cumulative weight of the evidence, along with all reasonable inferences the trial court could draw, sufficiently establishes affirmative links that support the trial court's finding of guilt"). Romero does not challenge any other elements of the offense. A rational trier of fact could have therefore reasonably concluded Romero knowingly possessed between one and four grams of methamphetamine with intent to deliver. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (c); *Stahmann*, 602 S.W.3d at 577.

Thus, the evidence is sufficient to support both of Romero's convictions, and we overrule his sole issue.

### III.    CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
18th day of March, 2021.