

# NUMBER 13-20-00445-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**KIMBERLY ELIZABETH BRISCOE,**                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                   **Appellee.**

### On appeal from the 24th District Court of Refugio County, Texas.

# MEMORANDUM OPINION

**Before Justices Hinojosa, Tijerina, and Silva
Memorandum Opinion by Justice Silva**

Appellant Kimberly Elizabeth Briscoe appeals her conviction of possession of a controlled substance, namely, methamphetamine, in the amount of one gram but less than four grams, a third-degree felony enhanced to a second-degree felony based on a prior felony conviction. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(4), 481.115(c); TEX. PENAL CODE ANN. § 12.42(a). By two issues which we construe as one, Briscoe

challenges the sufficiency of the evidence supporting her conviction. We affirm.

## I.    BACKGROUND

Refugio County Sheriff's Office (RCSO) Deputy Leonardo Tijerina testified that on February 10, 2020, while on patrol, he stopped a small, two-door vehicle at approximately 2:30 a.m. for driving on an improved shoulder. The driver of the vehicle identified herself as Trincia Beene but would not provide the officer with a driver's license or other identification card. After providing Beene's name to dispatch, Deputy Tijerina discovered that she had an active warrant. Deputy Tijerina detained Beene. Officer Javier Ontiveros with the Refugio Police Department (RPD) arrived thereafter to assist with the stop.

Deputy Tijerina then began speaking with Briscoe, who was sitting in the front passenger seat of the vehicle. Briscoe identified herself and provided a Texas identification card to Deputy Tijerina but did not have a valid driver's license. A third individual, subsequently identified as Tracey Pelletier, was in the back seat. RCSO Deputy Tyler Roy also arrived on scene to assist with the stop. Initially, Pelletier only provided his first name to the officers and refused to provide his last name or any other information. Eventually, Briscoe identified Pelletier's last name for the officers. Deputy Roy testified that though Briscoe identified Pelletier as her boyfriend, she "wasn't a hundred percent forthcoming" in providing his name. The officers ran Pelletier's name through dispatch and discovered that he had an active warrant. As the officers attempted to arrest Pelletier, he became combative, pushing the officers away, until officers ultimately utilized a Taser to subdue him.

After Pelletier was arrested, Deputy Roy and Officer Ontiveros conducted an

2

inventory search of the vehicle. On the driver's side of the vehicle, Deputy Roy discovered a lockbox disguised as a new English dictionary that contained approximately 3.5 grams of methamphetamine, a digital scale, additional used baggies, and three "glass pipes that are commonly used to smoke methamphetamine."

"[L]ocated on the floorboard just right under the right front passenger seat," where Briscoe had been seated, Deputy Roy found a "black zipper pouch" holding "[a] one-by-one [inch] baggy containing what [he] believe[d] to be crystal methamphetamine." The black pouch also contained a "torch lighter" which is "used to heat the bowl of [a] pipe to make the methamphetamine go to a vapor." According to Deputy Roy, the black pouch was located where Briscoe's feet would have been, and he did not need to reach under the seat to retrieve it. Additionally, Deputy Roy stated that the baggy containing methamphetamine in the black pouch was the same as the baggies found on the driver's side. Deputy Roy testified that when he exited the vehicle with the pouch, Briscoe said, "That's not mine," a few times. Deputy Roy notified Deputy Tijerina of the contraband, for which Deputy Tijerina placed Briscoe under arrest and transported her to the sheriff's office. Deputy Tijerina agreed that Briscoe was cooperative, respectful, and obedient during the encounter.

Officer Ontiveros testified that Briscoe never inquired as to the contents of the pouch, but she claimed Deputy Roy "planted" the evidence on her. Deputy Roy similarly testified that Briscoe did not ask what the substance was upon learning that the black pouch contained a controlled substance. On recall, Deputy Roy further testified that he did not submit any of the evidence for fingerprint testing. Deputy Roy agreed that neither

3

Briscoe nor the other individuals in the vehicle appeared intoxicated or otherwise under the influence of any substance.

Texas Department of Public Safety forensic scientist Chandler Ferguson testified that she weighed the various amounts of the crystalline substance and concluded that the amount found under Briscoe's seat weighed 0.31 grams. Ferguson further testified that she determined the substance to be methamphetamine through laboratory testing. Ferguson then tested 1.29 grams of the crystalline substance retrieved from the driver's side of the vehicle and determined the substance was also methamphetamine. Ferguson testified that both amounts of methamphetamine were found in similar green baggies.

The jury found Briscoe guilty. During the punishment phase, Briscoe pleaded true to the enhancement paragraph, and the jury sentenced her to twelve years' confinement and a $5,000 fine. This appeal followed.

## II. STANDARD OF REVIEW

"The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 309 (1979) (citing *In re Winship*, 397 U.S. 358, 361 (1970)). When reviewing the sufficiency of the evidence, we "view[] the evidence in the light most favorable to the prosecution," to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319; *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (adopting the standard of review for a sufficiency challenge as set out by *Jackson*). When a reviewing court views the evidence in the light most favorable to the verdict, it "is required to defer to the jury's credibility and weight determinations because

4

the jury is the **sole** judge of the witnesses' credibility and the weight to be given their testimony." *Brooks*, 323 S.W.3d at 899. "[A] factfinder may disbelieve some or all of a witness's testimony, even when that testimony is uncontradicted." *Hernandez v. State*, 161 S.W.3d 491, 501 (Tex. Crim. App. 2005).

"Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)). Juries may "draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial." *Hooper*, 214 S.W.3d at 15. If the record supports conflicting inferences, we presume that the factfinder resolved the conflict in favor of the prosecution and defer to that resolution. *Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012); *Brooks*, 323 S.W.3d at 899. "However, juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions." *Hooper*, 214 S.W.3d at 15. "[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them" while "[s]peculation is mere theorizing or guessing about the possible meaning of facts and evidence presented." *Id.* at 16. "[T]he mere existence of an alternative reasonable hypothesis does not render the evidence . . . insufficient." *Villarreal Lopez v. State*, 267 S.W.3d 85, 98 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.) (quoting *Richardson v. State*, 973 S.W.2d 384, 387 (Tex. App.—Dallas 1998, no pet.)); *see Jenkins v. State*, 493 S.W.3d 583, 601 n.36 (Tex. Crim. App. 2016) (quoting *Geesa v. State*, 820 S.W.2d 154, 157–61 (Tex. Crim. App. 1991), *overruled on other*

*grounds by Paulson v. State*, 28 S.W.3d 570, 571 (Tex. Crim. App. 2000)) ("[W]e will not usurp the role of the fact[]finder by factoring into our sufficiency analysis an alternative 'hypothesis inconsistent with the guilt of the accused.'").

Sufficiency of the evidence is measured against the elements of the criminal offense as defined by state law. *Fuller v. State*, 73 S.W.3d 250, 252–53 (Tex. Crim. App. 2002) (citing *Jackson*, 443 U.S. at 324 n.16). However, review of the "[s]ufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Garcia*, 367 S.W.3d at 687 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). A hypothetically correct jury charge "accurately sets out the law and adequately describes the offense for which the defendant was tried without increasing the State's burden of proof or restricting the State's theories of liability." *Hooper*, 214 S.W.3d at 14 (citing *Malik*, 953 S.W.2d at 240).

### III. APPLICABLE LAW

The elements of the offense of possession of a controlled substance as charged are (1) the defendant; (2) knowingly or intentionally; (3) possessed; (4) at least one gram but less than four grams of a controlled substance. TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (c); *Allen v. State*, 249 S.W.3d 680, 689 (Tex. App.—Austin 2008, no pet.). "'Possession' means actual care, custody, control, or management." TEX. PENAL CODE ANN. § 1.07(a)(39). Thus, "[t]o support a defendant's conviction as a principal actor, the State had to prove the defendant 'knowingly possessed' the contraband, which requires proof that the defendant (1) exercised 'actual care, custody, control, or management' over the substance and (2) knew the substance was contraband." *Espino-Cruz v. State*, 586

6

S.W.3d 538, 543 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd) (citing Tᴇx. Hᴇᴀʟᴛʜ & Sᴀғᴇᴛʏ Cᴏᴅᴇ Aɴɴ. § 481.002(38)); *see also Romero v. State*, No. 13-20-00103-CR, 2021 WL 1045804, at *4 (Tex. App.—Corpus Christi–Edinburg Mar. 18, 2021, no pet.) (mem. op., not designated for publication).

The State must prove that the defendant's connection with the contraband "was more than fortuitous"; in other words, "[m]ere presence at the location where drugs are found is . . . insufficient, by itself, to establish actual care, custody, or control of those drugs." *Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006). Further, the defendant's knowledge of the presence of the contraband is not sufficient to establish joint possession without other links. *Jenkins v. State*, 76 S.W.3d 709, 712 (Tex. App.— Corpus Christi–Edinburg 2002, pet. ref'd) (citing *Oaks v. State*, 642 S.W.2d 174, 177 (Tex. Crim. App. 1982)). "[E]vidence which affirmatively links [the defendant] to [the contraband] suffices for proof that [she] possessed it knowingly." *Barbosa v. State*, 537 S.W.3d 640, 645 (Tex. App.—San Antonio 2017, no pet.); *see also Romero*, 2021 WL 1045804, at *4.

The defendant does not need to be in exclusive possession of the contraband—a factfinder may otherwise infer that the defendant knowingly or intentionally possessed the contraband if sufficient facts and circumstances support the inference of possession. *Tate v. State*, 500 S.W.3d 410, 413–414 (Tex. Crim. App. 2016). The Texas Court of Criminal Appeals has compiled a non-exhaustive list of factors which may indicate a link connecting the defendant to the knowing possession of contraband:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the

accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Id.* at 414 (quoting *Evans*, 202 S.W.3d at 162 n.12). "Although these factors can help guide a court's analysis, ultimately the inquiry remains that set forth in *Jackson* . . . ." *Id.* (citing *Jackson*, 443 U.S. at 318–19). Further, it is "not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial." *Evans*, 202 S.W.3d at 162. "[J]uries trump both trial and appellate judges on weight-of-evidence determinations." *Id.* at 164 (citing *Jackson*, 443 U.S. at 326).

## IV.    ANALYSIS

Briscoe challenges her conviction by asserting (1) that the evidence was insufficient to support a finding that she knowingly or intentionally possessed any methamphetamine; and (2) if the evidence was sufficient to support knowing or intentional possession, the evidence was insufficient to establish that she possessed more than one gram of methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(4), 481.115(c).

We begin by noting that the cumulative force of the evidence could have clearly led a rational juror to believe that the 0.31 grams of methamphetamine found in the black

8

pouch belonged to Briscoe. *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 912. Briscoe was not merely present where the black pouch was found—she was in close proximity to it as it was found by the seat she occupied. *See Tate*, 500 S.W.3d at 414 (assessing the appellant's proximity to and accessibility of the contraband as a factor). More precisely, Deputy Roy testified that the pouch was directly under Briscoe's feet, and he did not need to reach under the seat to access it. *See id.* Although Briscoe denied ownership of the pouch, when notified that it contained a controlled substance, she did not inquire into what the substance was. Thus, a rational jury could have disbelieved Briscoe's denial of ownership and concluded that she was aware and in control of the contraband inside the pouch. *See Hernandez*, 161 S.W.3d at 501 ("[A] factfinder may disbelieve some or all of a witness's testimony, even when that testimony is uncontradicted."). "[T]he mere existence of an alternative reasonable hypothesis," that the pouch and contraband belonged to the driver, Beene, "does not render the evidence . . . insufficient." *See Villarreal Lopez*, 267 S.W.3d at 98; *Jenkins*, 493 S.W.3d at 601 n.36; *see also Espino-Cruz*, 586 S.W.3d at 543 (observing that "[c]ontrol over the contraband may be exercised by more than one person").

Furthermore, several factors support finding an affirmative link between Briscoe and the methamphetamine: she was present when the search was conducted, was in close proximity to the remainder of the contraband and where additional contraband and paraphernalia were located, such as the three glass pipes, and her assertion that Deputy Roy planted the lesser amount of methamphetamine could be construed as an indication of a consciousness of guilt. *See Tate*, 500 S.W.3d at 414. The presence of three glass

9

pipes commonly used to smoke methamphetamine, several baggies of methamphetamine, and additional used baggies where three individuals were present supports an inference that the group had smoked or intended to smoke the methamphetamine together. *See Hooper*, 214 S.W.3d at 15. Additionally, the fact that both amounts of methamphetamine were found in similar green baggies supports an inference that the two amounts shared common ownership. *See id*.

Although Briscoe contends that the methamphetamine was not in plain view, no one appeared to be under the influence of narcotics, she did not make any incriminating statements, and she was not found with a lot of cash, "the absence of certain links do[es] not weigh against those that are present." *See Ferguson v. State*, 313 S.W.3d 419, 426 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *see also Maldonado v. State*, No. 13-12-00586-CR, 2015 WL 4381067, at *4 (Tex. App.—Corpus Christi–Edinburg July 16, 2015, no pet.) (mem. op., not designated for publication) ("[I]t is well established that the absence of certain links do[es] not weigh against those that are present."); *Davenport v. State*, No. 13-17-00363-CR, 2019 WL 613275, at *6 (Tex. App.—Corpus Christi–Edinburg Feb. 14, 2019, pet. ref'd) (mem. op., not designated for publication) (concluding sufficient affirmative links present despite several missing links and drugs being found inside another passenger's genitals); *Larios v. State*, No. 13-15-00022-CR, 2015 WL 9487107, at *3 (Tex. App.—Corpus Christi–Edinburg Dec. 29, 2015, no pet.) (mem. op., not designated for publication) (holding the jury could have concluded the absence of some affirmative links was attributed to the appellant being "careful and collected in the way she pursued her task").

We are limited to determining whether under the evidence presented, viewed in a light most favorable to the prosecution, *any* reasonable juror could have concluded that Briscoe knowingly or intentionally exercised actual care, custody, or control, over the aggregate amount of methamphetamine. *See Jackson*, 443 U.S. at 326; *Espino-Cruz*, 586 S.W.3d at 543; TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (c); TEX. PENAL CODE ANN. § 1.07(a)(39). When measured by the elements of a hypothetically correct jury charge, the evidence was legally sufficient such that a rational juror could have concluded that Briscoe knowingly or intentionally possessed at least one gram of methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (c); TEX. PENAL CODE ANN. § 1.07(a)(39); *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 912. Briscoe's sole issue is overruled.

## V.    CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
10th day of March, 2022.

11