

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-13-00079-CR

---

FABIAN FABELA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 287th District Court
Parmer County, Texas
Trial Court No. 3317, Honorable Gordon Houston Green, Presiding

---

April 15, 2014

## OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Fabian Fabela, was convicted of evading arrest or detention while using a motor vehicle[1] and sentenced to a term of confinement for five years in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ). Appellant has perfected his appeal and presents five issues. Three of the issues contend the trial court erred in various aspects of its charges to the jury, specifically relating to 1) the court's error in defining a peace officer and said instruction being a comment on the

---

[1] See TEX. PENAL CODE ANN. § 38.04(b)(2)(A) (West Supp. 2003).

weight of the evidence, 2) a supplemental charge in the punishment phase of the trial, and 3) the trial court's failure to give the jury an instruction regarding the voluntariness of appellant's statement. Appellant also contends that the trial court committed reversible error in admitting evidence before the jury. Finally, appellant contends that the evidence was insufficient to sustain the jury's verdict. We will address the issues in a different order than they appear in appellant's brief. We will affirm the judgment entered by the trial court.

## Factual and Procedural Background

On September 23, 2012, Kevin Fried loaned his gray GMC pickup, with the license plate number AC10169, to appellant. At approximately 1:00 a.m., appellant dropped Fried off at his work site on the outskirts of Muleshoe, Texas. Soon after that, Muleshoe Police attempted to stop the vehicle for a traffic offense. This began a car chase that lasted for more than two hours and stretched over four counties, two in New Mexico and two in Texas.

During the first portion of the chase, Muleshoe police officer, Douglas Ruthardt, testified, there was only one occupant of the pickup and it appeared to be a Hispanic male with a shaved head. Eventually, the officer lost sight of the pickup. A call to be on the lookout for the gray pickup was broadcast over the police radio. Soon, an officer of the Farwell, Texas police department spotted a pickup that matched the description broadcast over the radio. Officer Jared Romero, of the Farwell police, was able to see the license plate and noted that the number was AC10169. The pickup sped away from the Farwell officer who then discontinued the chase due to officer safety concerns.

Subsequently, the pickup was spotted driving in the wrong lane by Curry County, New Mexico Deputy Riley Lumas. Deputy Lumas attempted to stop the vehicle but soon lost sight of it. Lumas testified to the attempts made to stop the vehicle. He testified that he observed a lone Hispanic male driving the gray pickup. The efforts to stop the pickup were unsuccessful.

The gray pickup was then seen in Parmer County, Texas, by Chief Deputy Joe Orozco of the Parmer County Sheriff's Department. Another chase ensued. Orozco testified that, at the time of the chase, he was driving his official sheriff's vehicle that was marked as such and contained a full complement of emergency lights and sirens. Following this chase, the pickup was wrecked in Texico, New Mexico, just across the state line from Farwell, Texas. The driver of the pickup abandoned the truck and fled on foot. Orozco testified that the wrecked truck was the same one that he had pursued a short time earlier. A Texas Department of Public Safety trooper later apprehended appellant.

After appellant had been arrested, but before any *Miranda*[2] warnings had been given him, appellant made several incriminating statements to Orozco. Appellant admitted fleeing from the police in the pickup. Further, appellant bragged to Orozco that he had been able to outrun the police because he was "drifting." Appellant additionally made incriminating statements to another deputy, Jeremiah Murillo. These statements were followed by an apology to the deputy.

---

[2] *See Miranda v. Arizona,* 384 U.S. 436, 471, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

3

After appellant was arrested, he was transported to the Parmer County jail. While in the sally port at the jail awaiting examination by EMS personnel, appellant made admissions to Sheriff Randy Geries that the police could not catch him because he was "drifting." Further, appellant continued to brag to the Sheriff about how he could not be caught.

The next day, appellant was interviewed by Orozco. Prior to beginning any questioning of appellant, appellant was given his statutory warnings. This interview was recorded. In the interview, appellant admits he was driving the pickup and that, at the time of chase, he was intoxicated. Appellant further stated he had been shot at and was scared.

At trial, appellant testified that he had consumed a considerable amount of alcohol at a bar in Hereford, Texas. He further testified that he had not driven the pickup during the chase. Instead, appellant insisted that the pickup was driven by a female with the first name of Crystal.

At the conclusion of the testimony, the trial court presented a proposed court's charge to counsel for the State and appellant. Appellant had no objections to the charge as presented. The jury subsequently returned a verdict of guilty. After considering the punishment evidence, that same jury returned a verdict of confinement in the ID-TDCJ for a term of five years.

Appellant now presents issues challenging the verdict and judgment the trial court issued. We will affirm.

4

Sufficiency of the Evidence

We will first consider appellant's contention that the evidence was insufficient to sustain the jury's finding of guilt.

Standard of Review

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson*." *Id.* When reviewing all of the evidence under the *Jackson* standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. *See id.* at 906–07 n.26 (discussing Judge Cochran's dissenting opinion in *Watson v. State*, 204 S.W.3d 404, 448–50 (Tex. Crim. App. 2006), as outlining the proper application of a single evidentiary standard of review). "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Id.* at 899.

<u>Analysis</u>

Appellant's contention regarding the sufficiency of the evidence is grounded on his contention that, because no officer involved in the chase could positively identify appellant as the driver of the pickup from their observations of the driver during the chase, this means that the evidence is insufficient. However, such an analysis fails on a number of levels. First, every officer who had an opportunity to observe the driver testified that the pickup was driven by a Hispanic male. One officer, Ruthard, testified that the driver was male with a shaved head or very short hair. Additionally, Lumas testified that the driver of the pickup was a Hispanic male and that he was alone in the pickup. The record further reflects that appellant was alone in the pickup when the owner, Fried, allowed appellant to borrow the pickup.

Additionally, appellant made several statements to various Parmer County deputies and the Sheriff wherein appellant admitted to driving the pickup and bragged about the fact that the police could not catch him. Finally, even were we to discount the statements appellant volunteered, the day following his arrest, when interviewed by Orozco, appellant admitted to being the driver of the pickup when he came back into Texas and successfully outmaneuvered the deputy.

When the evidence is reviewed in the light most favorable to the jury's verdict, we view it as sufficient for a rational jury to find all essential elements of the charge beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 912. Accordingly, appellant's issue to the contrary is overruled.

6

Evidentiary Issue

Appellant contends that the trial court erred in admitting the statements he made to various law enforcement officers prior to being given his statutory warnings.

Standard of Review

We review a trial court's decision to admit or exclude evidence for abuse of discretion. *See Casey v. State,* 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). A trial court does not abuse its discretion if its decision is within the zone of reasonable disagreement. *See Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007) (en banc); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). We will sustain the trial court's decision if that decision is correct on any theory of law applicable to the case. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990) (en banc).

Analysis

Appellant's complaint about the statements he made to the various law enforcement officials on the night of his arrest is based upon the fact that he had not received his statutory warnings. *See* TEX. CODE CRIM. PROC. ANN. arts. 15.17, 38.22 §§ 2(a), 3(a) (West Supp. 2013);[3] *Miranda,* 384 U.S. at 471. At the time the testimony was offered at trial, appellant's singular objection was that the statements were hearsay. The trial court overruled that objection. Appellant now contends on appeal that the admissions were admitted in violation of various statutory provisions of the Texas Code of Criminal Procedure. These objections were not presented to the trial court and,

---

[3] Further reference to the Texas Code of Criminal Procedure will be by reference to "art. ____."

accordingly, have not been preserved for appeal. *See* T<small>EX</small>. R. A<small>PP</small>. P. 33.1(a)(1)(A).

Further, the complaint appellant now makes before this Court is different than the objection lodged in the trial court. "An objection stating one legal basis may not be used to support a different legal theory on appeal." *Rezac v. State,* 782 S.W.2d 869, 870 (Tex. Crim. App. 1990) (en banc). For these reasons, nothing has been preserved for appeal regarding the issue of the oral statements made to the various law enforcement officials on the night of his arrest. *See id.* at 871.

Even were we to assume, for purposes of argument, that the issue of the admission of this evidence was properly before this Court, appellant would still not prevail. This is so because none of appellant's statements were the result of any custodial interrogation. *See* art. 38.22 §§ 2(a), 3(a); *Miranda,* 384 U.S. at 471. Each of these referenced sections of Article 38.22 and *Miranda* apply to either written statements or oral statements that are the result of custodial interrogation. *See* art. 38.22 §§ 2(a), 3(a); *Miranda* 384 U.S. at 471. Appellant was surely in custody; however, he was not being interrogated when he decided to brag about his prowess as a driver of the pickup. *See Alford v. State*, 358 S.W.3d 647, 653 (Tex. Crim. App. 2012) (holding that the term "interrogation" refers to (1) express questioning and (2) any words or actions on the part of police that police should know are reasonably likely to elicit an incriminating response from the subject.) The record reveals that appellant was not asked any questions and that he volunteered the admissions that he now complains about. Accordingly, there was no error in the admission of the statements.

When reviewing appellant's complaint about Article 15.17, we note that this provision provides, among other things, that an arrested individual should be taken

8

before a magistrate as expeditiously as possible, but in not later than 48 hours after arrest. *See* art. 15.17(a). The complained of statements were made within a matter of an hour or two of appellant's arrest. Accordingly, they did not violate that provision of the statute. To the extent Article 15.17 additionally provides for the statutory warnings prior to any interrogation of an arrested person, we are again faced with the record that demonstrates that appellant was not being interrogated. *See Alford*, 358 S.W.3d at 652-53.

## Charge Issues

Appellant brings forth three different issues complaining about various aspects of the court's charge. Two issues concern the court's charge at the guilt/innocence phase and a third issue complains about the court's supplemental charge during the punishment phase of the trial. We will address the issues regarding the guilt/innocence charge first.

### Standard of Review

Appellate review of alleged jury charge error is a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). Initially, the reviewing court must determine if the charge was erroneous. *Id.* If we find that error occurred, we must then analyze the error for harm. *Id.* After we analyze the error for harm, we must review the record to determine whether appellant objected to the charge at issue. *See Middleton v. State,* 125 S.W.3d 450, 453 (Tex. Crim. App. 2003) (en banc). The degree of harm necessary for reversal depends upon whether error was preserved. *Id.* (quoting *Hutch v. State,* 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) (en banc)). If appellant properly

9

objected to the charge, "the standard of harm is whether 'the error appearing from the record was calculated to injure the rights of [appellant]' which we have construed as 'some harm.'" *Celis v. State*, 416 S.W.3d 419, 423 n.3 (Tex. Crim. App. 2013) (quoting Article 36.19 and *Trevino v. State*, 100 S.W.3d 232, 242 (Tex. Crim. App. 2003) (per curiam)). "Conversely, unpreserved charge error warrants reversal only when the error resulted in egregious harm." *Id.* (citing *Pickens v. State*, 165 S.W.3d 675, 680 (Tex. Crim. App. 2005) (en banc)).

First Alleged Charge Error

Appellant's initial complaint is actually two complaints. Initially, appellant's issue complains that the trial court erred in its definitional instruction of the term "peace officer." Appellant's contention is that the definition given was incomplete. Paragraph III of the court's charge contained the following definition: "'Peace officer' means a person elected, employed, or appointed as a peace officer under Art. 2.12 of the Code of Criminal Procedure or other law." There is no explanation of what the requirements of Article 2.12 are. A review of the cited article reveals that there are 36 subparagraphs of persons and positions defined as peace officers. *See* art. 2.12 (West 2007). In subparagraph (1), the following are listed as peace officers: "sheriffs, their deputies, and those reserve deputies who hold a permanent peace officer license issued under Chapter 1701, Occupation Code." *See id.* A trial court is statutorily obligated to instruct the jury on the law applicable to the case. *See* art. 36.14 (West 2007). In connection with that obligation, the trial court is required to communicate to the jury each statutory definition that affects the meaning of an element of the offense. *See Villarreal v. State*,

10

286 S.W.3d 321, 329 (Tex. Crim. App. 2009). Thus, the definition of "peace officer" was incomplete and, accordingly, was in error.

We next turn to appellant's second complaint contained within the first issue. By this complaint, appellant contends that the trial court committed error by commenting on the evidence as to an element of the offense. Specifically, the trial court's Paragraph III contained the following instruction to the jury: "You are instructed that Chief Deputy Joe Orozco is a peace officer." Orozco's status as a peace officer is an element of the offense. *See* TEX. PENAL CODE ANN. § 38.04(b)(2)(A). Accordingly, such a fact was one that belonged exclusively in the province of the jury to decide. *See* art. 36.13 (West 2007); *Kirsch,* 357 S.W.3d at 652. Because the court's instruction addressed an issue left to the province of the jury, such instruction was a comment on the evidence and in error. *See Kirsch,* 357 S.W.3d at 652.

Having found that the trial court erred in its definition and instruction regarding the term "peace officer," we now turn to address the question of harm. As a preliminary matter, we note that there was no objection to the court's charge. Therefore, we are addressing harm when the objection now lodged to the court's charge was not preserved for appeal. *See Middleton,* 125 S.W.3d at 453. Accordingly, we now review the issue of harm for egregious error. *See Celis*, 416 S.W.3d at 423 n.3.

In reviewing the record for egregious harm, we are to determine whether the harm purveyed by the error "create[d] such harm that it deprive[d] the accused of a fair and impartial trial." *Almanza v. State,* 686 S.W.2d 157, 172 (Tex. Crim. App. 1985) (en banc). As a reviewing court, we must examine the entire jury charge, the state of the

11

evidence, including the contested issues and weight of the probative evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole. *Warner v. State,* 245 S.W.3d 458, 461 (Tex. Crim. App. 2008).

A review of the entire court's charge reveals that, aside from the two complaints appellant now makes upon appeal, the balance of the charge properly sets forth the elements of the offense and squarely places the burden of proof upon the State. Further, the application paragraph is legally correct in its application of the law to the facts of the case.

The evidence at trial reveals that Orozco testified that he had been a certified peace officer for 21 years. On the night in question, he was employed as the chief deputy in Parmer County. Orozco testified about the events that led him to chase the gray pickup truck in Parmer County. During Orozco's entire testimony, appellant never attempted to cross-examine him regarding whether he was a peace officer. Further, a review of appellant's testimony reveals that appellant's defense was based upon his assertion that it was not appellant who was driving the gray pickup. Instead, appellant asserted that the pickup was being driven by someone known only as Crystal. The issue of the status of Orozco as a peace officer was never a contested issue in the trial.

Finally, we look at the final arguments presented by the State and appellant's attorney. The State did mention the instruction given by the trial court regarding Orozco's status as a peace officer during its opening. However, this was mentioned only the one time and consisted of no more than one sentence. The bulk of the argument regarding Orozco's status as a peace officer was centered on the evidence

12

that reflected he was in a police car. The State additionally argued that the police car in question was clearly marked and contained emergency lights and a siren. Appellant's final argument focused on the perceived contested issue of whether appellant was, in fact, driving the pickup truck during the chase. The State's closing argument never mentioned Orozco or his status as a peace officer.

When the review of the record is completed, we find that the evidence of guilt was substantial. The only contested issues at the trial did not involve the status of Orozco as a peace officer. The State did nothing to emphasize the erroneous instruction. At the end of this analysis, the error in the two charge issues complained of by appellant at the guilt/innocence stage was harmless, as the trial court's error did not deny appellant a fair and impartial trial. *See Almanza,* 686 S.W.2d at 172. Appellant's first charge issue is overruled.

Second Charge Issue

In what appellant denoted as his Issue 5, he contends that the trial court committed reversible error in failing to give the jury an instruction concerning the voluntariness of his oral statements. The oral statements at issue are the ones appellant made to Orozco and Murillo, shortly after his arrest. Appellant's complaint is couched in terms of Article 38.22(6). That is, because he was under the influence of alcohol and drugs at the time he made the oral statements, such statements were involuntary. *See* art. 38.22 § 6. This is known as the "general" voluntariness question. *See Oursbourn v. State*, 259 S.W.3d 159, 181. (Tex. Crim. App. 2008). Under applicable case law, Section 6 of Article 38.22 apply to both custodial and non-custodial

interrogation. *See id* at 171. However, that is not the end of the inquiry. The facts of our case show that appellant was in custody at the time he made the oral statements of which he complains. However, the record further demonstrates that appellant's statements were not the result of interrogation. Rather, these were statements simply made by appellant in the heat of the moment to proclaim his driving prowess. These statements were more akin to a res gestae statement. *See Hood v. State,* 490 S.W.2d 549, 550 (Tex. Crim. App. 1973) (holding that Article 38.22 does not preclude the admission of a res gestae statement). Section 5 of Article 38.22 provides, in relevant portions:

> Nothing in this article precludes the admission of a statement made by the accused in open court at his trial, before a grand jury, or at an examining trial in compliance with Articles 16.03 and 16.04 of this code, or of a statement that is res gestae of the arrest or of the offense, or of a statement that does not stem from custodial interrogation . . . .

art. 38.22 § 5.

Under our fact scenario, appellant's statements to Orozco and Murillo were not subject to the requirements of Article 38.22 § 6 for the reasons outlined above. *See Santiago v. State*, Nos. 05-10-01082-CR, 05-10-01083-CR, 2012 Tex. App. LEXIS 6739, at *8 (Tex. App.—Dallas Aug. 13, 2012, no pet.) (not designated for publication); *Badall v. State,* 216 S.W.3d 865, 870 n.2 (Tex. App.—Beaumont 2007, pet. ref'd); *Villarreal v. State,* 61 S.W.3d 673, 680 (Tex. App.—Corpus Christi 2001, pet. ref'd). The *Villarreal* court held that if either "custodial" or "interrogation" predicates are not met, then Article 38.22 does not apply. *See Villarreal,* 61 S.W.3d at 680 (citing *Little v. State*, 853 S.W.2d 179, 183 (Tex. App.—Corpus Christi 1993, no pet.)). We agree with the Corpus Christi court and, accordingly, the trial court did not err in failing to give a

14

jury instruction on the voluntariness of appellant's oral statements. Therefore, appellant's issue to the contrary is overruled.

Third Charge Issue

Appellant's third issue regarding the court's charge is directed to a supplemental charge the trial court gave, after the jury began its deliberations, on the issue of punishment. According to the record, approximately an hour after the jury began deliberating punishment, the trial court received a written communication from the jury. The written communication consisted of three expressed questions and two statements that the trial court apparently construed to be questions. Our concern is with the second item on the list. To better illustrate the record, we list the five items in the written communications:

(1) Will he receive treatment in prison?

(2) Time served apply toward sentence.

(3) Is treatment mandated by the court already—or do we decide?

(4) How old was he in 2006 when he broke probation or tested positive.

(5) If he breaks community supervision does he serve[s] the rest of his term in prison?

From this listing, it is easily determinable that the jury was in fact asking questions of the trial court. Some questions the trial court could not, and did not, answer. As a result of the questions from the jury, the trial court prepared a supplemental charge on punishment. It is the trial court's answer to item two of which appellant now complains. The trial court gave the following additional instruction regarding item two.

15

Regarding Question No. 2, if the jury does not recommend that the imposition of sentence as to confinement be suspended, the defendant will be granted credit on the sentence for the time he has been in jail on this charge.

After preparing the supplemental charge, the trial court gave both the State and appellant copies of the proposed supplement. After reciting what the supplemental charge answered as to item 2, appellant voiced the following objection:

I don't know if it's proper for them to know that. As I said off the record before, I don't have any authority. I don't have the wherewithal right now to look it up. But I do want that objection made on the record. I don't believe it's proper for them to know because that is going to figure into their calculation, much as parole—you know, taking into account parole, which isn't proper, something like that, is how I see it. They're going to give him a longer sentence knowing that what he has is going to count against that sentence. And that's why I'm objecting. That's why I think it's improper.

Appellant lodges three separate complaints to the supplemental charge. First, appellant contends that the communication from the jury was not a question and therefore, the instruction was improper. Second, the instruction supplied could not be characterized as the "law of the case" as required by the Texas Code of Criminal Procedure Article 36.14. *See* art. 3614. Finally, appellant asserts that the supplemental instruction was not given for one of the statutory reasons provided in Texas Code of Criminal Procedure Article 36.16. *See* art. 36.16 (West 2006). Turning aside from the State's argument that the issue is multifarious and should be rejected on that basis alone, we have to look at the objection lodged with the trial court.

16

In reading and trying to interpret the objection lodged by trial counsel, it is apparent to the Court that trial counsel's objection was directed at the effect the proposed supplemental instruction would have on the jury's subsequent punishment verdict. In short, it appears the objection would be that the supplemental instruction was a comment on the evidence that would result in a harsher sentence.

Whether we are correct or in error about how we perceive appellant's trial counsel's objection to the supplemental charge, the objection lodged cannot be said to encompass the three areas appellant now attempts to bring forth. Accordingly, the complaint made at trial does not comport with the issue(s) that are now presented for our consideration. *See Rezac,* 782 S.W.2d at 871. Therefore, nothing is presented for appellate review. *Id.* Accordingly, appellant's issue regarding the supplemental charge is overruled.

## Conclusion

Having overruled each of appellant's issues, we affirm the judgment of the trial court.

Mackey K. Hancock
Justice

Publish.

17