

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00317-CR
No. 02-23-00318-CR

_____

DEADRIC HADLEY, Appellant

V.

THE STATE OF TEXAS

_____

On Appeal from the 462nd District Court
Denton County, Texas
Trial Court Nos. F23-4063-462, F23-4064-462

_____

Before Kerr, Birdwell, JJ.; and Gonzalez, J.[1]
Memorandum Opinion by Justice Kerr

---

[1]The Honorable Ruben Gonzalez, Judge of the 432nd District Court of Tarrant County, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to Section 74.003(h) of the Government Code. *See* Tex. Gov't Code Ann. § 74.003(h).

# MEMORANDUM OPINION

A jury found Appellant Deadric Hadley guilty of aggravated assault against a public servant and evading arrest. Hadley appeals from his convictions, raising four issues: (1) the trial court failed to qualify the jury under Article 35.12 of the Texas Code of Criminal Procedure; (2) the trial court erred by admitting an improperly authenticated video; (3) the evidence is legally insufficient to support the jury's verdict on the "peace officer" element of the evading-arrest offense; and (4) the trial court erred by including an incomplete definition of "peace officer" in the jury charge on the evading-arrest offense. We affirm.

## I. Background

On August 12, 2023, Officer Tyler Hartman with the Aubrey Police Department was in a marked patrol car in Providence Village when he encountered Hadley driving his black sedan at a high rate of speed. After Hadley ran a stop sign, Officer Hartman activated his overhead emergency lights and siren and followed Hadley. Hadley refused to stop and, instead, sped up. Not long after pursuing Hadley through an alley, Officer Hartman saw that Hadley had crashed and had abandoned his car.

Hadley fled on foot, and as Officer Hartman approached the accident site, Hadley raised and pointed an AR-style rifle at Officer Hartman, causing Officer Hartman to swerve and crash his patrol car. Afterward, Hadley ran toward a nearby alley.

Concerned about the active threat to the public, other officers arrived, searched for Hadley, and eventually identified and arrested him. The State charged Hadley with aggravated assault against a public servant and evading arrest. *See* Tex. Penal Code Ann. §§ 22.02, 38.04. The jury found Hadley guilty on both counts and assessed him at 50 years' and 25 years' confinement for each respective count; the trial court sentenced Hadley in accordance with the jury's assessment and ordered the sentences to run concurrently.

## II. Issue One

## (Juror Qualification)

In his first issue, Hadley argues that the trial court erred by failing to qualify the jury under Article 35.12 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 35.12. Based on the record, we presume the jury was properly impaneled, but we alternatively find no harm.

### A. Applicable Law and Standard of Review

Under Article 35.12, prospective jurors must be asked by the trial court, or under its direction, whether they are qualified to vote in the county and state, whether they have ever been convicted of theft or any felony, and whether they are under indictment or legal accusation for theft or any felony. *Id.*; *Bonilla-Rubio v. State*, No. 02-23-00200-CR, 2024 WL 4377437, at *2 (Tex. App.—Fort Worth Oct. 3, 2024, no pet.) (mem. op., not designated for publication). A party may challenge a prospective juror who is not a qualified voter, who has been convicted of theft or any felony, or

3

who is legally accused of theft or any felony. Tex. Code Crim. Proc. Ann. art. 35.16(a)(1)–(3). When a party challenges a prospective juror who has been either convicted or legally accused of theft or any felony, the trial court must disqualify that juror. *Id.* art. 35.19. Unless the matter was "disputed in the trial court, or unless the record affirmatively shows the contrary," we presume that the jury was properly impaneled. *See* Tex. R. App. P. 44.2(c)(2).

**B. Analysis**

As we have noted in a prior case arising out of Denton County, "[i]n larger judicial districts, it is standard to ask the qualifying questions of the general jury pool, typically in a central jury room, under the direction of the court before the venire members are sent to their respective courts to be impaneled for a specific case." *Bonilla-Rubio*, 2024 WL 4377437, at *2. The record indicates that such a process was used in this case.

The trial court specifically asked the prospective jurors, "Is there anybody that did not take the oath when they were downstairs? Okay. When they qualified you?" The record reflects an "[u]nintelligible" response from "multiple speakers[,]" at which point the trial court asked, "They did not give you an oath downstairs?" After receiving a "[n]egative group response[,]" the trial court gave the venire panel an oath.

On the specific issue of juror qualifications, the trial court asked, "Did they go through your qualifications downstairs?" The trial court received an "[a]ffirmative

4

group response" and stated, "Okay. That's good to know. They're suppose[d] to swear you in before they do that."

While the record indicates that, under the trial court's direction, someone "downstairs" went through the qualifying questions, the record is otherwise silent about the specific questions the prospective jurors were asked. Undisputedly, no one objected to this process, to the lack of juror-qualification questions, or to any serving jurors who were disqualified under Article 35.12. A silent record is not tantamount to an affirmative showing that jurors (1) were not asked the qualifying questions under Article 35.12 or (2) responded in a manner such that they should have been disqualified but were not. *See id.* We thus must presume that the prospective jurors were asked the qualifying questions under Article 35.12. *See* Tex. R. App. P. 44.2(c)(2); *Bonilla-Rubio*, 2024 WL 4377437, at *2.

But even if we determined that the trial court erred by failing to qualify the jury, Hadley would still need to show harm. *See* Tex. R. App. P. 44.2; *Njogo v. State*, No. 02-18-00245-CR, 2018 WL 6844140, at *2 (Tex. App.—Fort Worth Dec. 31, 2018, no pet.) (mem. op., not designated for publication). Hadley asserts that the trial court's failure to comply with Article 35.12's statutory testing on juror qualifications amounted to constitutional error under the Sixth Amendment to the U.S. Constitution, requiring analysis under Rule of Appellate Procedure 44.2(a). *See* Tex. R. App. P. 44.2(a). We disagree.

In *Gray v. State*, the Court of Criminal Appeals stated that "many—perhaps most—statutes are designed to help ensure the protection of one constitutional right or another." 159 S.W.3d 95, 97 (Tex. Crim. App. 2005). That a statute has such a purpose does not automatically convert a statutory right into one of federal constitutional dimension. *Id.* Although Hadley attempts to equate Article 35.12's statutory requirements with the Sixth Amendment's right to a fair and impartial jury, he does not point to any controlling authority concerning the alleged constitutional error of improper juror qualification.

As we did in *Njogo*, we specifically reject Hadley's argument that a trial court's alleged failure to assess the veniremembers' qualifications under Article 35.12 amounts to constitutional and structural error. 2018 WL 6844140, at *1 & n.3. Therefore, to warrant reversal, the record must establish "significant harm" from a known disqualified juror's service. *See Bonilla-Rubio*, 2024 WL 4377437, at *3 n.2 (first citing *Njogo*, 2018 WL 6844140, at *2; and then citing Tex. Code Crim. Proc. Ann. art. 44.46(2)). Because the record does not show that a disqualified juror served in this case, and because Hadley neither identifies a disqualified juror nor argues that any of the selected jurors were disqualified, he has not shown harm. We overrule Hadley's first issue.

6

## III. Issue Two

## (Video Authentication)

In his second issue, Hadley complains that the trial court erred by overruling his lack-of-foundation objection to certain video evidence in State's Exhibit 35. Hadley did not preserve error on this issue.

### A. Error Preservation

Appellate courts must ensure that alleged error has been preserved before addressing the merits of such alleged error. *Obella v. State*, 532 S.W.3d 405, 407 (Tex. Crim. App. 2017). To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015). A party must continue to object each time the objectionable evidence is offered. *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); *Clay v. State*, 361 S.W.3d 762, 766 (Tex. App.—Fort Worth 2012, no pet.). Any error in the admission of evidence is cured when the same evidence comes in elsewhere without objection. *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003).

**B. Analysis**

The State questioned Benjamin Hartman (not related to Officer Tyler Hartman)[2] to authenticate two videos contained in State's Exhibit 35.[3] Benjamin testified that he lived on the street where Hadley had crashed. Benjamin testified that on August 12, 2023, around 8:00 p.m., he heard tires screeching and two collisions. Looking in the alley behind his home, Benjamin saw a man wearing black clothing, shuffling in sandals, and carrying a rifle.

To corroborate this testimony, the State offered video from Benjamin's neighbor's camera that showed a man wearing dark clothing walking through an alley with a rifle. Benjamin testified that he had reviewed State's Exhibit 35 and that it contained a fair and accurate depiction of the surveillance videos capturing the events of August 12, 2023, around 8:00 p.m. Asked the follow-up question about "[a]ny additions, deletions or alterations[,]" Benjamin responded, "No."[4]

At that point, the State offered State's Exhibit 35, and Hadley objected: "Your Honor, I would object to the surveillance video that did not belong to [Benjamin]. He's not -- lack of foundation." The trial court overruled the objection and admitted the exhibit.

---

[2]For clarity and brevity, we refer to Benjamin Hartman by his first name.

[3]One video came from Benjamin's camera, and the second video came from a neighbor's camera.

[4]During cross-examination, Benjamin acknowledged that he did not know if the video had been "altered or changed or anything."

Although the State used Benjamin to authenticate the video evidence, the State waited to publish the video until it later questioned Officer Hartman. At that time, Hadley did not renew his objection to State's Exhibit 35, and Officer Hartman testified—while the video played—that the video was consistent with what he and other witnesses had observed. Additionally, Hadley testified that he was the person in the video wearing blue pants and a black shirt and holding a rifle in the alleyway.

Because Hadley did not request a running objection or continue to object each time the State published or posed questions about State's Exhibit 35, any possible error in the admission of State's Exhibit 35 was cured. *See Valle*, 109 S.W.3d at 510; *Coleman v. State*, No. 02-18-00471-CR, 2020 WL 241975, at *10 (Tex. App.—Fort Worth Jan. 16, 2020, no pet.) (mem. op., not designated for publication); *see also Hawthorne v. State*, No. 02-23-00290-CR, 2024 WL 3978013, at *4 (Tex. App.—Fort Worth Aug. 29, 2024, no pet.) (mem. op., not designated for publication) (holding that appellant failed to preserve error by not requesting a running objection or continuing to object to challenged evidence); *White v. State*, No. 08-09-00269-CR, 2011 WL 4825650, at *6–8 (Tex. App.—El Paso Oct. 12, 2011, pet. ref'd) (not designated for publication) (holding alleged error regarding video cured when appellant failed to object to other witnesses' testimony about video's contents). We overrule Hadley's second issue.

## IV. Issue Three

## (Evidentiary Sufficiency)

In his third issue, Hadley argues that the evidence is legally insufficient to support his evading-arrest conviction because the State did not prove that Officer Hartman's employer—the City of Aubrey—is an incorporated city and, therefore, did not prove that Officer Hartman was a "peace officer." We disagree.

### A. Standard of Review

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by a hypothetically correct jury charge to the evidence adduced at trial. *See Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021); *see also Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("The essential elements of an offense are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Hammack*, 622 S.W.3d at 914. The "law as

10

authorized by the indictment" means the statutory elements of the charged offense as modified by the charging instrument's allegations. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021); *see also Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

**B. Analysis**

A person evades arrest in a vehicle if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him. Tex. Penal Code Ann. § 38.04(a); *Gordon v. State*, No. 02-23-00101-CR, 2024 WL 2760913, at *2 (Tex. App.—Fort Worth May 30, 2024, pet. ref'd) (mem. op., not designated for publication). The elements of the evasion statute are (1) a person (2) intentionally flees (3) from a peace officer or federal special investigator (4) with knowledge he is a peace officer or federal special investigator (5) with knowledge that the peace officer or federal special investigator is attempting to arrest or detain the person, and (6) the attempted arrest or detention is lawful. *Nicholson v. State*, 682 S.W.3d 238, 245 (Tex. Crim. App. 2024).

"Peace officer" means "a person elected, employed, or appointed as a peace officer under Article 2.12, Code of Criminal Procedure . . . ." Tex. Penal Code Ann. § 1.07(a)(36). Article 2.12(3) of the Texas Code of Criminal Procedure provides that

11

"peace officers" include "marshals or police officers of an incorporated city, town, or village." Tex. Code Crim. Proc. Ann. art. 2.12(3).[5]

Essentially, a person commits a crime under Section 38.04 if he knows a peace officer is attempting to arrest or detain him but nevertheless refuses to yield to a lawful show of authority. *Gordon*, 2024 WL 2760913, at *2. A jury may infer knowledge from circumstantial evidence, such as the defendant's acts, words, and conduct. *Reyes v. State*, 480 S.W.3d 70, 77 (Tex. App.—Fort Worth 2015, pet. ref'd).

Hadley challenges only whether Officer Hartman was a "peace officer" and specifically argues that the State failed to prove under Article 2.12(3) that Aubrey is an incorporated city. *See* Tex. Code Crim. Proc. Ann. art. 2.12(3). In response, the State asks us to take judicial notice under Texas Rule of Evidence 201 that Aubrey is an incorporated city. *See* Tex. R. Evid. 201. Although Hadley acknowledges that appellate courts may take judicial notice of incorporation—*see, e.g.*, *Gonzales v. State*, 723 S.W.2d 746, 750–51 (Tex. Crim. App. 1987)—Hadley argues that we should not do so because the jury did not receive an instruction under Rule 201(f) "that it may or may not accept the noticed fact as conclusive." *See* Tex. R. Evid. 201(f).

Rather than address the parties' specific disagreement about Rule 201, we resolve this issue through Rule 204(b)(1), which enables us to take judicial notice of Texas municipal ordinances. *See* Tex. R. Evid. 201, 204(b)(1), 204(d) ("The court—

---

[5]We note that as of January 1, 2025, Article 2.12(3)'s "peace officer" definition will be replaced with the following definition: "The following are peace officers: . . . a marshal or police officer of a municipality . . . ." Act of Jun. 12, 2023, 88th Leg., R.S., H.B. 4504, § 1.001(to be codified at Tex. Code Crim. Proc. Ann. art. 2A.001(3)).

not the jury—must determine municipal and county ordinances."). Accordingly, we judicially notice Aubrey's Ordinance 767-22, adopting its Home Rule Charter, which recognizes and declares that Aubrey is an incorporated city. City of Aubrey, Tex., Ordinance 767-22 (Nov. 16, 2022);[6] *see* Tex. R. Evid. 204(d) ("The court's determination must be treated as a ruling on a question of law."); *see also Farahnak v. City of Southlake Bd. of Adjustment*, No. 02-21-00202-CV, 2022 WL 405899, at *1 n.1 (Tex. App.—Fort Worth Feb. 10, 2022, pet. denied) (mem. op.) (taking judicial notice of City of Southlake ordinance accessed on the city's webpage); *Gette v. State*, 209 S.W.3d 139, 143–44 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (taking judicial notice on appeal of city ordinance).

Besides raising the incorporation issue, Hadley does not otherwise contest the sufficiency of the evidence supporting Officer Hartman's employment as an Aubrey police officer or his show of authority to arrest or detain Hadley. On these topics,

---

[6]Aubrey's ordinances—including its Charter Adoption Ordinance—may be accessed at www.aubreytx.gov/27/Government. The Preamble to Aubrey's Home Rule Charter provides as follows:

> We, the citizens of Aubrey, Texas, in order to establish a Home Rule municipal government, . . . hereby adopt this Home Rule Charter . . . ; and do hereby declare the residents of the City of Aubrey, in Denton County, Texas[,] living within the legally established boundaries of the said City, to be a political subdivision of the State of Texas, incorporated forever under the name and style of the "City of Aubrey" . . . .

City of Aubrey, Tex., Ordinance 767-22. Taking judicial notice of Aubrey's Home Rule Charter, we reject Hadley's argument in his reply brief that there "is no evidence or authority" that Aubrey was incorporated under Article XI, Section 5 of the Texas Constitution. *See* Tex. Const. art. XI, § 5 (allowing cities with over 5,000 inhabitants the right to adopt a home-rule charter).

Officer Hartman testified that he successfully completed the police academy before working for the Aubrey Police Department. While working for Aubrey, Officer Hartman completed Aubrey's field-training program, enabling him to patrol on his own. Officer Hartman patrolled not only within Aubrey's city limits but also (by arrangement) in several other towns without their own police department, including Providence Village.

When Officer Hartman encountered Hadley in Providence Village, Officer Hartman was driving a Chevy Tahoe marked "Police" on the side with overhead emergency lights and a department badge. After Officer Hartman saw Hadley commit a traffic violation, he turned on his overhead emergency lights and siren to follow Hadley, and Hadley sped up.

"Proof that an officer in a vehicle is attempting to arrest or detain a person generally consists of the officer['s] displaying authority by the use of overhead/emergency lights and siren." *Duvall v. State*, 367 S.W.3d 509, 513 (Tex. App.—Texarkana 2012, pet. ref'd); *Perry v. State*, No. 02-19-00262-CR, 2020 WL 479590, at *5 (Tex. App.—Fort Worth Jan. 30, 2020, pet. ref'd) (mem. op., not designated for publication). Based on the evidence presented—including that Officer Hartman was an Aubrey police officer displaying authority by using his marked police car's overhead emergency lights and siren—along with reasonable inferences—a rational trier of fact could have found that Officer Hartman was a "peace officer"

14

beyond a reasonable doubt.[7] *See Carter v. State*, 620 S.W.3d 147, 150 (Tex. Crim. App. 2021); *Gordon*, 2024 WL 2760913, at *2. The evidence is thus legally sufficient to support Hadley's evading-arrest conviction, and we overrule Hadley's third issue.

## V. Issue Four

## (Jury Charge)

Hadley contends in his fourth issue that the trial court erred by giving an incomplete definition of "peace officer." Hadley cannot prevail on this issue because he did not object to this definition and has not shown egregious harm.

### A. Standard of Review

We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In reviewing a jury charge, we first determine whether error occurred; if not, our analysis ends. *Id.*

Unpreserved charge error warrants reversal only when the error resulted in egregious harm. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim. Proc. Ann. art. 36.19. The appropriate inquiry for egregious harm is fact and case-specific. *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013); *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011).

---

[7]As the factfinder, the jury was entitled to disbelieve Hadley's testimony that he did not know Officer Hartman was following him with his overhead emergency lights on. *See Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010).

In determining egregious harm, we must consider "the actual degree of harm . . . in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel[,] and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. *See generally Gelinas*, 398 S.W.3d at 708–10 (applying *Almanza*). Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 490 (citing *Almanza*, 686 S.W.2d at 172). This review is meant to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174. Egregious harm is a "high and difficult standard" to meet. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

**B. Analysis**

A trial court is statutorily obligated to instruct the jury on the law applicable to the case. Tex. Code Crim. Proc. Ann. art. 36.14. In connection with that obligation, the trial court must define terms that affect the meaning of a crime's elements through a jury charge tailored to the facts presented at trial. *Burnett v. State*, 541 S.W.3d 77, 84 (Tex. Crim. App. 2017) (citing *Villarreal v. State*, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009)).

Here, the trial court instructed the jury as follows: "'Peace officer' means a person elected, employed, or appointed as a peace officer." Hadley contends that the

16

definition should have also included the Penal Code's specific reference to a "peace officer under Article 2.12, of the Code of Criminal Procedure, Section 51.212 or 51.214, Education Code, or other law." *See* Tex. Penal Code Ann. § 1.07(a)(36).[8] But Hadley did not object to the definition.

Even if we assume—without deciding—that the trial court erred in giving an incomplete "peace officer" definition, we conclude that any such error was harmless. Because Hadley did not object to the "peace officer" definition, we review whether the record shows that Hadley suffered egregious harm. *See Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). Applying *Almanza*'s four factors, the "peace officer" definition did not egregiously harm Hadley.

**(1) The entire charge.** In reviewing the entire court's charge, we observe that aside from Hadley's narrow complaint about the "peace officer" definition, the balance of the charge properly sets forth the elements of the evading-arrest offense. Moreover, the charge squarely places the burden of proof upon the State, and the application paragraph is legally correct in applying the law to the facts of the case.

**(2) The state of the evidence and contested evidence.** As we stated above, Officer Hartman testified that he completed the police academy; worked for the City

---

[8]On this specific proposal, at least one court of appeals has found a "peace officer" definition to be incomplete when it references but does not explain Article 2.12's requirements. *See Fabela v. State*, 431 S.W.3d 190, 196 (Tex. App.—Amarillo 2014, pet. dism'd). The State maintains that the more generalized definition the trial court gave mirrors the Texas State Bar's Criminal Pattern Jury Charge and correctly states the law. But the State also acknowledges that it would have been proper and perhaps the better practice to define "peace officer" as "a person lawfully elected, employed, or appointed as a police officer of an incorporated city."

17

of Aubrey; completed its field-training program; and at the time he pursued Hadley, was driving a marked police vehicle with his overhead emergency lights and siren on. That the City of Aubrey is incorporated—as we have judicially noticed—was never contested at trial. Although the State did not ask Officer Hartman whether he was a licensed peace officer, as it did with another law-enforcement witness, Hadley similarly did not question Officer Hartman on his authority to act as a police officer for the Aubrey Police Department.

At trial, rather than contesting Officer Hartman's peace-officer status, Hadley instead denied having or pointing his admittedly "illegal" weapon at Officer Hartman; Hadley wanted the jury to believe that he had hidden his weapon. But Hadley admitted that he alone had driven the car that had crashed, and he testified that he was the person in the videos shown to the jury.

**(3) Arguments of counsel.** During closing arguments, neither the State nor the defense discussed the "peace officer" definition. Principally, the closing arguments focused on Hadley's truthfulness about whether he was aware that Officer Hartman was following him, whether Hadley had fled by vehicle or on foot, and whether Hadley had pointed his rifle at Officer Hartman—not on whether Officer Hartman was employed by an incorporated city. Indeed, not once did either side argue about whether Aubrey is an incorporated city.

**(4) Other relevant information.** Neither Hadley nor the State points to anything else in the record that bears on whether the "peace officer" definition caused any, much less egregious, harm to Hadley. And we find nothing either.

**Application of *Almanza*'s factors.** Having reviewed the record, we conclude that the evidence of guilt on the evading-arrest offense was substantial. The contested issues at trial did not concern whether Officer Hartman was a "peace officer," and the State did not mention the charge's "peace officer" definition. Accordingly, any alleged error in the definition was harmless, and any such alleged error did not deny Hadley a fair and impartial trial. *See Taylor,* 332 S.W.3d at 490; *Almanza,* 686 S.W.2d at 172; *see also Fabela,* 431 S.W.3d at 197 (holding that incomplete "peace officer" definition did not cause egregious harm). We overrule Hadley's fourth issue.

## VI. Conclusion

Having overruled Hadley's four issues, we affirm the trial court's judgments.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  December 12, 2024

19